John W. and Juanita SHAMBLIN *v.*
Dr. Spencer D. ALBRIGHT, III

82-225                                    647 S.W.2d 470

Supreme Court of Arkansas
Opinion delivered March 14, 1983

*Jones, Gilbreath & Jones,* for appellants.

*Davis, Cox & Wright,* by: *Sidney P. Davis, Jr.,* for appellee.

DARRELL HICKMAN, Justice. This is a medical malpractice case. The jury returned a verdict in favor of the defendant medical doctor and we affirm.

On appeal two arguments are made for reversal: First, that the trial court wrongly prevented the appellants from presenting evidence on all theories of liability; second, that the court refused to permit certain cross-examination of a doctor testifying for the appellee. We find no merit to either argument.

The appellee, Dr. Spencer D. Albright, a dermatologist practicing in Fayetteville, Arkansas, had extensively treated the appellant for skin cancer. Mr. Shamblin had a long history of serious damage to his face from the sun. In 1975, Dr. Albright performed cryosurgery on a skin cancer on Mr. Shamblin's face. Apparently it was not healing well and Mr. Shamblin returned to Dr. Albright many times. Dr. Albright did not perform another biopsy. Eventually, Mr. Shamblin sought a second opinion from a Dr. Shadid and it was determined that Dr. Albright's treatment was not successful and that cancer persisted.

Shamblin sued Albright for malpractice in the treatment of his cancer. His wife joined in the suit. The trial court entered a pre-trial order almost a year before trial specifically limiting the issue of liability to whether Dr. Albright should have ordered an additional biopsy after the cryosurgery. That was to be the sole issue in determining whether Dr. Albright was guilty of malpractice.

Well into the trial, the appellant sought to question Dr. Vernon Carter about whether he would use cryosurgery on a lesion as large as ten millimeters. An objection was timely made and the attorneys discussed at length with the court whether this was at variance from the court's pre-trial order. The trial court ruled that it was at variance and prohibited the inquiry. It was not a broad arbitrary order but, indeed, a specific one. There is no doubt it was entered well before the trial with notice to both parties. The order noted the names of the attorneys present for both parties when the order was made. There was no exception made to the order until it came up during the cross-examination of Dr. Carter. Such pre-trial orders, permitted by ARCP, Rule 16, are valuable tools in handling litigation in an orderly and efficient manner. We find no abuse of discretion by the court in limiting the appellant to his theory that the appellee was negligent because he failed to order another biopsy.

The second issue concerns the cross-examination of Dr. Thomas Jansen, a dermatologist who testified for the appellee as an expert. During his cross-examination appellant sought to show that Dr. Jansen had a financial interest

in the outcome of the case. *In-camera* the doctor was asked whether he had such an interest and Dr. Jansen said that he did not. He was then asked if a judgment was entered against Dr. Albright whether it would cause Dr. Jansen's insurance rates to rise. Dr. Jansen essentially answered that he was not sure, and said, "I suspect that any suit that is found in favor or against the insurance company causes an adjustment in experience; . . . . "

We cannot say the trial court abused its discretion in preventing this line of cross-examination. The specific argument that Dr. Jansen's malpractice insurance might go up was considered too speculative by the trial court and any value that might be attached to it would be far outweighed by a prejudicial impact. We cannot say the court abused its discretion in finding that it was not proper relevant evidence that the appellant was entitled to present to the jury to show bias and prejudice. *Firestone Tire & Rubber Co.* v. *Little,* 276 Ark. 511, 639 S.W.2d 726 (1982). The appellant was allowed to ask the doctor in front of the jury how much he was paid to testify and who would pay him. He answered that his fee would be $5,000 to $6,000 and Dr. Albright would pay him.

We find no prejudicial error.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I dissent because the majority opinion misinterprets ARCP Rule 16 and the trial court erred in limiting appellants' right to present evidence and to cross-examine witnesses. In my opinion the trial court also erred in specifically limiting the issue of liability to the question of whether Doctor Albright should have ordered an additional biopsy after cryosurgery.

It is necessary to discuss Rule 16 in order to understand what happened in this case. The rule relates to pretrial procedure. It specifically states that when a pretrial order is issued pursuant to Rule 16 the order controls the subsequent course of the action, unless modified to prevent manifest

injustice. In reading this rule I do not find any authority for a trial court to exclude proof of matters which are in issue. The reporter's notes to Rule 16 indicate that the rule has little effect on prior Arkansas law. Previously, no provisions existed for allowing a trial court to delete allegations concerning liability when the matter was still in issue. In my opinion the purpose of Rule 16 is to rid the court system of uncontested matters and simplify the issues. In the present case the trial court simplified the appellant right out of court. The concluding portion of Rule 16 limits the court's order to issues which are not disposed of by admissions or agreements between counsel. An order properly entered pursuant to this rule no doubt controls the subsequent course of action, unless otherwise modified.

We do not have the facts surrounding the issuance of the pretrial order. It appears that it was a routine order to which appellants paid little attention. The appellants painfully learned of the existence of the order when they attempted to prove the allegations contained in the complaint. The court had simply "pretrialed" the appellants out of most of their theories of liability. In addition to the pretrial order being too broad I think the court should have allowed an amendment at the trial to prevent a manifest injustice. In my opinion this pretrial order was contrary to the rationale stated in *Sherman* v. *U.S.*, 462 F.2d 577 (5th Cir. 1972). The opinion in *Sherman* stated:

> ·Basically, these [pretrial] orders and stipulations, freely and fairly entered into, are not to be set aside except to avoid manifest injustice.

It is my opinion that the trial court unduly restricted the appellants both in the cross-examination of opposing witnesses and in the presentation of direct evidence. A Doctor Jansen testified on behalf of the appellee. He had previously testified for the same insurance company in other cases and was to receive between $4,000 and $6,000 for this appearance. The witness and the appellee were insured for malpractice by the same company. The witness said he thought that if the case were lost it would have a bearing on his own insurance rates. Also, he suspected the pay for his testimony

would come directly from the appellee's insurance carrier. The trial court would not allow the foregoing testimony to be presented to the jury. In the case of *Murray* v. *Jackson*, 180 Ark. 1144, 24 S.W.2d 960 (1930) we held such cross-examination to be proper. In *Murray*, supra, a doctor was testifying in opposition to other testimony on behalf of the appellant when the opposing counsel was permitted to ask the doctor who employed him. On appeal the trial court was affirmed and in the opinion it was stated:

> The cross-examination was proper for the purpose of impeaching or contradicting the witness. The jury might have found that the employment of the physician made him biased in favor of the defendant, or at least tended to show the interest of the witness in the case. Because it chanced to show that an insurance company was back of the defendant to the action does not affect its competency.

It appears to me that the fact that a witness was to receive several thousand dollars for his testimony and also thought his insurance rate would increase if the appellant won the case would be enough to raise the issue of bias. Sometimes a witness may be unaware that his testimony is shaded in favor of or against one of the parties. *Weinstein's Evidence* § 607 [03] (1982). It is the tendency of most people to shape their sensory reactions to fit the testimony they want to give. *Wigmore on Evidence* §§ 940 and 945 (Chadbourn revision 1970). Based on the foregoing, I believe errors were committed which can only be remedied through a new trial.