Dorothy **PENNINGTON**,
Plaintiff–Appellee,

v.

**SEARS, ROEBUCK & COMPANY**,
Defendant–Appellant.

No. 93CA1175.

Colorado Court of Appeals,
Div. V.

June 30, 1994.

**153**

Irwin & Boesen, P.C., Brad R. Irwin, Denver, for plaintiff-appellee.

Anstine and Hill, Ronald C. Hill, Denver, for defendant-appellant.

Opinion by Judge CASEBOLT.

In this action to recover for injuries resulting from a slip and fall, defendant Sears, Roebuck & Company (Sears), appeals from a judgment entered in favor of plaintiff, Dorothy Pennington. We reverse and remand for a new trial.

Pennington alleged in her complaint that, after a large snowfall, she slipped and fell in a puddle of water inside Sears' store. She asserted Sears was negligent and requested recovery for medical expenses, permanent bodily injury, pain and suffering, mental anguish, and loss of earning capacity.

Sears' answer denied negligence and raised, as relevant here, an affirmative defense of failure to mitigate damages. The parties filed disclosure certificates that did not disclose any additional theories of recovery or other applicable defenses.

On the first day of trial before jury selection commenced, Sears became aware that Pennington intended to introduce evidence that Sears had promised to pay for all of Pennington's medical expenses and later reneged on that promise, paying only a small portion. Sears requested the court to exclude such evidence. The trial court initially held that the evidence would be relevant because Sears had asserted a defense of failure to mitigate damages. However, Sears withdrew that defense in order to prevent presentation of such evidence.

During opening statements, Pennington was precluded from discussing any offer or any subsequent refusal by Sears to pay her medical expenses. Following opening statements, the court again considered whether Pennington would be allowed to present such evidence. Pennington asserted that the evidence remained admissible because it was not offered to prove liability of Sears under CRE 409, but rather was offered to demonstrate that she had incurred mental anguish as a result of Sears' breach of its promise. She further contended that this evidence was admissible to show that her damages were exacerbated or aggravated because of her financial inability to obtain care and treatment.

The trial court ruled that the evidence would be admitted for purposes of demonstrating mental anguish. It further held that it was admissible to show whether the damages incurred by Pennington were exacerbated or aggravated because of the lack of care and also to demonstrate why Pennington did not seek care or treatment sooner.

Before the evidence was first admitted, the trial court instructed the jury that it was being admitted "solely as it relates to the issue of damages, losses or injuries sustained by the plaintiff and not for the purpose of showing the negligence, if any, of the defendant."

After trial, the jury awarded Pennington $100,000 in compensatory damages.

Sears contends that the trial court erroneously admitted evidence that it offered and then refused to pay for Pennington's medical expenses. We agree.

■ Evidence of an offer to pay for medical expenses may not be admitted to establish a defendant's liability. CRE 409. However, under certain circumstances in which the evidence is offered for purposes other than proof of liability, the evidence may be admissible.

Situations in which other courts have admitted such evidence are illustrative. For example, when a defendant questioned at trial whether an accident occurred on its premises, its offer to pay medical bills was admissible. *Great Atlantic & Pacific Tea Co. v. Custin*, 214 Ind. 54, 13 N.E.2d 542 (1938). Also, when a defendant denied ownership of the instrumentality that had allegedly caused the plaintiff's injury, evidence of his promise to pay medical bills was held to be admissible. *Flieg v. Levy*, 148 App.Div. 781, 133 N.Y.S. 249, *aff'd*, 208 N.Y. 564, 101 N.E. 1102 (1912). Also, when an agency relationship was a material issue for determination, such evidence was likewise appropriate. *Brown v. Wood*, 201 N.C. 309, 160 S.E. 281 (1931).

However, we are aware of no case authority that discusses the propriety of introducing such evidence to prove mental anguish or aggravation of an injury. *See* Annotation, *Admissibility of Evidence Showing Payment, or Offer or Promise of Payment, of Medical, Hospital and Similar Expenses of Injured Party by Opposing Party*, 65 A.L.R.3d 932 (1975). Hence, we must analyze the issue under CRE 401, 402, and 403.

Under CRE 401, the proffered evidence must relate to a fact "that is of consequence to the determination of the action." Stated differently, the proffered evidence is inadmissible unless it is legally material to some factual issue in the case. *See People v. Carlson*, 712 P.2d 1018 (Colo.1986).

■ If the proffered evidence is legally material, its admissibility becomes dependent on whether the evidence has any tendency to make the existence of a consequential fact more probable or less probable than it would be without the evidence. This latter inquiry, then, focuses on logical relevance. If the proffered evidence is not logically relevant, the evidence should not be admitted. *See People v. Carlson, supra.*

In analyzing whether the challenged evidence relates to a fact of consequence, the elements of the negligence claim for relief must be examined.

■ As pertinent here, § 13–21–115(3)(c)(I), C.R.S. (1993 Cum.Supp.) allows recovery to an invitee for "damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." Thus, the evidence of an offer to pay medical expenses and later refusal may bear upon or relate to the injuries and losses sustained by Pennington following the accident because it concerns medical expenses, the reasonableness of those medical expenses, bodily injury, and mental anguish. However, the proffered evidence does not relate to or bear upon damages proximately caused by the *negligence* of Sears; therefore, legal materiality does not exist under the claim presented here.

Pennington asserted that the particular mental anguish for which she sought recov-ery, in *addition to* that which was caused by Sears' negligence, arose because of Sears' *breach of promise*. Thus, the offer to pay medical expenses does not meet the test of legal materiality in a negligence claim context.

Likewise, the refusal to pay the medical expenses, while it may be a source of mental anguish, does not show that the type of mental anguish requested for breach of Sears' promise resulted from Sears' alleged *negligence* in maintaining or creating the danger. Thus, absent circumstances not present here, the refusal also does not meet the test of legal materiality.

■ Regarding aggravation of Pennington's injuries, while the refusal to pay the expenses may explain *why* Pennington's injury created a permanent impairment, *i.e.*, by delaying the surgery to a point when the injury could not be repaired, that issue was not of consequence to the determination of the action. The *reasons* Pennington did not obtain medical care earlier were not important to the determination of the action because Sears withdrew its failure to mitigate defense and did not contend at trial that Pennington was precluded or limited in recovery of damages for the permanent impairment she admittedly sustained because she did not undergo immediate surgery. Indeed, the surgeon's testimony that Pennington's permanent impairment existed because she did not undergo surgery earlier, was uncontested. *See generally* J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 401(03) (1986).

■ Moreover, the evidence does not satisfy the test of logical relevance. Under the circumstances of this case, the mere offer and later refusal to pay medical expenses do not by themselves have a tendency to prove or disprove the existence or severity of anxiety, sleeplessness, worry, concern, anger, or frustration that would flow from Sears' negligence as opposed to its breach of promise. This evidence neither affords a reasonable inference that mental anguish resulted from Sears' negligence in maintaining the premises, nor sheds light upon that issue. *See People v. Botham*, 629 P.2d 589 (Colo.1981).

We do not perceive that a reasonable juror could believe that the fact that Sears offered to pay Pennington's medical expenses and later refused to do so makes it more probable that Pennington had mental anguish caused by Sears' negligence, or increases the degree of that anguish flowing from such negligence. *See* J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 401(08) (1986).

■ Furthermore, even if we were to conclude that the subsequent refusal to pay medical expenses was both legally and logically relevant, exclusion of this evidence would nevertheless be required under CRE 403. The danger of unfair prejudice, misleading the jury, and confusion of the issues is evident. Even with the limiting instruction given by the trial court here, given Pennington's inability to pay for her own medical expenses, her husband's health problems, and his limited social security income, we can readily discern how this evidence would create prejudice and confuse the jury.

Additionally, we note that, despite the court's limiting instruction confining this evidence to the issue of damages, Pennington's counsel argued it in closing as a liability issue, stating that if Sears "were fighting her on liability, why would they pay for the test that's $1950 when they said we'll only pay for $500? We're going to let you put that together."

■ Moreover, we are unable to conclude that this error was harmless. Once admitted, this evidence was repeatedly emphasized by Pennington, both in her own direct testimony, that of her husband, and that of her son. While portions of this evidence were elicited by Sears on cross-examination, once the trial court erroneously admitted the evidence, Sears had no choice but to attempt to discredit it. Additionally, Pennington's closing argument noted above is anything but harmless.

Under these circumstances, we conclude that admission of the evidence was improper under CRE 409, 401, 402, and 403, and its admission was not harmless. In view of this disposition, we do not address the other issues raised by Sears.

The judgment is reversed, and the cause is remanded for a new trial.

HUME, J., concurs.

RULAND, J., dissents.

Judge RULAND dissenting.

I respectfully dissent.

In my view, the trial court did not abuse its substantial discretion in determining that evidence of Sears' promise to pay Pennington's medical bills and subsequent *refusal* to do so was relevant and material to the disputed issue of damages in this case. CRE 401; *People v. Hernandez*, 687 P.2d 502 (Colo.App.1984).

CRE 409 was adopted verbatim from the Federal Rules of Evidence. *See* F.Ed.R.E. 409. The function of the rule is a salutary one:

Rule 409 is the product of a desire to encourage humanitarianism, which would be discouraged if the humanitarian act of paying expenses were penalized by making it evidence against the payor. In addition, the inference that the conduct means anything other than humanitarianism is unreliable.

P. Rothestein, *Federal Rules of Evidence* at p. 126.9 (1992); *see also* J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 409[01] (1986).

Here, there was no violation of either the language or the spirit of the rule in this case because, with one exception, Pennington testified that Sears recanted on the adjustor's promise to pay her medical bills and thus any humanitarian considerations are not involved. Further, the evidence was not admitted on the issue of Sears' liability.

Turning then to the issue of relevancy, it was undisputed that Pennington suffered a massive tear to the rotator cuff of her left shoulder as a result of the fall. However, while Sears withdrew its failure to mitigate affirmative defense, it persisted in its denial of Pennington's claim as to the "nature and *extent*" of her injuries and the jury was so instructed.

The opinion of Pennington's surgeon was uncontroverted that had plaintiff obtained the required surgery soon after receiving her injury, the nature and extent of her permanent impairment and pain would have been substantially diminished. The reasons for the failure to obtain that surgery then became highly relevant and material to explain why she ended up with both the degree of permanent impairment that she did as well as the gravity of the pain, suffering, and mental anguish that she claimed.

As a result, in my view, the evidence of Sears' offer and refusal to honor that offer, evidence that Pennington had no private insurance or funds from which to pay for treatment, and the fact that federal medicaid benefits were unavailable to her were all relevant and material to establish the nature and extent of her injuries. *See* CRE 402.

The jury was instructed on two occasions in close sequence that this evidence was being admitted for the limited purpose of plaintiff's damage claim and not as to Sears' liability. There is a presumption that the jury understood and applied that instruction and I find no basis in this record to conclude otherwise. *See Prutch v. Ford Motor Co.,* 618 P.2d 657 (Colo.1980).

Specifically, and contrary to Sears' contention, there is ample evidence in the record to support the jury's damage award. First, the jury awarded in excess of $17,000 for medical expenses incurred and unpaid as well as future medical expenses for physical therapy. The parties stipulated to the unpaid medical bills in excess of $15,000 and the cost of future physical therapy treatments was projected both as to cost and duration thus rendering this part of the award subject to mathematical calculation.

The jury also awarded in excess of $41,000 for loss of enjoyment of life, inconvenience, pain and suffering, and mental anguish. This award is also amply supported in the record. Pennington can no longer undertake the numerous household activities for which she formerly assumed responsibility, she can no longer participate in physical activities with her numerous grandchildren, she can no longer participate as an instructor in her church kindergarten, her ability to drive an automobile is limited, and she can no longer enjoy varied physical and recreation activities such as bowling and camping in which she formerly participated.

The jury finally awarded in excess of $41,-000 for plaintiff's permanent impairment and disfigurement. The surgeons' testimony is uncontroverted that her injury was permanent because, due to the interval between the date of the accident and surgery, no repair could be effected to two of the tendons in her shoulder.

As a result, plaintiff can lift very little weight with her left arm, she cannot undertake repetitive motion, and she will always be subjected to chronic pain. She has a life expectancy of in excess of 18 years. And, she testified that she requires six Tylenol pain capsules each day to mitigate her chronic pain and she is unable to sleep more than two to three hours at a time before she is awakened by that pain.

Conversely, to the extent that Sears asserts the evidence was prejudicial under CRE 403, I agree. Most relevant and material evidence is. *See People v. District Court,* 785 P.2d 141 (Colo.1989). But, I disagree with the conclusion that the prejudice was unfair.

This is because the focus of the evidence is upon the refusal to abide by a promise which in effect aggravated the injury—not the making of the promise itself. As noted by our supreme court in *People v. District Court, supra:*

> The thrust of Rule 403 favors admissibility. . . . Rule 403 requires that the probative value of evidence in question be 'substantially outweighed' by the danger of unfair prejudice. . . . 'This requirement is meant to make clear that the need for the exclusion is a drastic remedy and less restrictive measures, such as cautionary instructions to the jury, may suffice to reduce the danger of prejudice to an acceptable level.' (citation omitted)

785 P.2d at 146.

Here, the requisite cautionary instruction was given.

Finally, to the extent Sears claims that the evidence was unduly emphasized, I note the lack of objections in the record based upon any cumulative theory, and the extended cross-examination of Pennington by trial counsel on two separate occasions regarding this topic.

Under these circumstances and because I do not view Sears' other contentions for reversal as having merit, I would affirm the judgment.