Kelly BONSER, Plaintiff–Appellee,

v.

Todd H. SHAINHOLTZ, D.D.S., Defendant–Appellant.

No. 97CA0395.

Colorado Court of Appeals, Div. I.

April 1, 1999.

Certiorari Granted Sept. 7, 1999.

Heckman & O'Connor, P.C., Brett Steven Heckman, Vail, Colorado, for Plaintiff–Appellee.

Pryor, Johnson, Montoya, Carney & Karr, P.C., Elizabeth C. Moran, Daniel M. Hubbard, Englewood, Colorado, for Defendant–Appellant.

Opinion by Judge METZGER.

In this dental malpractice action, defendant, Todd H. Shainholtz, D.D.S., appeals the judgment entered on a jury verdict awarding $70,070 to plaintiff, Kelly Bonser. We reverse and remand for a new trial.

The premise of plaintiff's complaint was that certain treatment provided by defendant had caused a temporal mandibular joint (TMJ) disorder. The care at issue occurred during an office visit in late 1995. During

that visit, defendant replaced two damaged filings. He also sought to diagnose the reason for plaintiff's complaint of a sore jaw and determined that the correction of an abnormal bite was needed, a procedure he completed that day.

The next time defendant heard from plaintiff was two weeks later when she returned to his office unannounced, complaining of jaw pain and expressing anger that defendant had treated her when her jaw hurt. Defendant said, "I'm sorry, I'll do what I can for you." Later, after learning that plaintiff was undergoing splint therapy and physical therapy, defendant sent her two checks, totaling $1,175.25, to cover these expenses. With each check, defendant informed plaintiff that he meant this as a gesture of goodwill and not as an indication that he felt he had done something wrong in her treatment. Plaintiff did not cash the checks and this action followed.

## I.

Defendant first contends the trial court erred in allowing evidence that he had liability insurance and that defendant and an expert witness were insured by the same insurance trust. We agree.

Defendant filed a motion *in limine* seeking to exclude this evidence. After argument, the trial court deferred ruling until trial and, at trial, determined:

> I've reviewed the materials that were submitted and it seems to me that the insurance issue should probably come before the jury if desired on the basis of bias issue, number one, the financial aspect, but number two the aspect that the Trust doesn't accept all dentists and potential bias from that issue. So I'll deny the motion *in limine*.

After some argument by counsel and a contemporaneous request for reconsideration, the trial court reasoned:

> [CRE] 411 says it should not be permitted for the purpose of disclosing insurance; however, if it's relevant for other things it may be. And in this case the personal involvement of members of the pool with claims against the pool and [the expert

witness'] saying that yeah, I use it in a way—it was set up as a way to screen good dentists from bad dentists. So presumably anybody who's a member of the pool has already been approved as more than average competence. In other words a clear bias, you know, a clear bias issue.

## A.

■ The standard of review of a trial court's ruling on admissibility or exclusion of evidence is abuse of discretion. *Hock v. New York Life Insurance Co.*, 876 P.2d 1242 (Colo.1994).

The governing rule, CRE 411, provides:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

It has long been recognized that, in a negligence action, evidence concerning the existence of a defendant's liability insurance is immaterial and highly prejudicial. *Prudential Property & Casualty Insurance Co. v. District Court*, 617 P.2d 556 (Colo.1980); *Quigley v. Jobe*, 851 P.2d 236 (Colo.App. 1992).

■ The standard for admission of evidence relating to bias or credibility is whether the evidence is sufficiently probative of the witness' bias and not unfairly prejudicial to the defendant. *People v. Trujillo*, 749 P.2d 441 (Colo.App.1987). Bias is a state of mind and only those demands which can influence the mind at the moment of testifying are relevant to a demonstration of bias. *People v. Simmons*, 182 Colo. 350, 513 P.2d 193 (1973).

## B.

■ We agree with defendant's contention that it was error to admit evidence of commonality of liability insurance to show bias.

As the parties concede, CRE 411 and the above-cited cases establish that proof of lia-

bility insurance may not be admitted for the purpose of proving liability. However, Colorado courts have not yet directly addressed the question whether the fact of commonality of insurance between a party and an expert witness—without more—can be admitted to show bias on the part of the expert witness. The majority of states that have addressed this question preclude the use of such evidence, finding it to be more prejudicial than probative.

This proposition is concisely set out in *Wallace v. Leedhanachoke*, 949 S.W.2d 624, 628 (Ky.App.1996), where the court, in considering facts similar to those here, held that: "[T]he mere fact that ... two physicians shared a common insurance carrier—absent a more compelling degree of connection—does not clearly evince bias by the expert, and its arguable relevance or probative value is insufficient to outweigh the well-established rule as to the inadmissibility of evidence as to the existence of insurance."

We elect to follow this majority rule. *See Shamblin v. Albright*, 278 Ark. 565, 647 S.W.2d 470 (1983)(precluding evidence of commonality of insurance); *Conley v. Gallup*, 213 Ga.App. 487, 445 S.E.2d 275 (1994)(following majority rule); *Golden v. Kishwaukee Community Health Services Center, Inc.*, 269 Ill.App.3d 37, 206 Ill.Dec. 314, 645 N.E.2d 319 (1994)(evidence of membership in mutual insurance company not enough to show bias, but expert's employment by insurer is adequate connection); *Irish v. Gimbel*, 691 A.2d 664 (Me.1997)(excluding evidence of commonality of insurance but permitting evidence of expert's lobbying efforts for tort reform); *Warren v. Jackson*, 125 N.C.App. 96, 479 S.E.2d 278 (1997)(precluding commonality evidence and calling for a "connections test"); *Mills v. Grotheer*, 957 P.2d 540 (Okla.1998)(precluding commonality evidence and adopting "connections test"); *Cerasuoli v. Brevetti*, 166 A.D.2d 403, 560 N.Y.S.2d 468 (1990)(precluding evidence of witness' employment as consultant to insurer but allowing evidence of witness' prior medical review services for law firms); *Patton v. Rose*, 892 S.W.2d 410 (Tenn.App.1994)(membership in mutual insurance company and participation in its profits not enough to overcome prohibi-

tion in rule); *see also* Annot., *Propriety & Prejudicial Effect of Trial Counsel's Reference or Suggestion in Medical Malpractice Case that Defendant is Insured*, 71 A.L.R.4th 1025 (1989).

Thus, we conclude the admission of this evidence was error.

### C.

■ The trial court also found that, because the expert witness had been involved in establishing the insurance trust and had, at the time of its formation, considered the trust's membership requirements to be effective as a method to screen good dentists, the expert was biased in assuming that defendant was "an above average" dentist because of his membership in the trust. We reject this reasoning.

In *Evans v. Colorado Permanente Medical Group*, 902 P.2d 867 (Colo.App.1995), *aff'd in part, rev'd in part on other grounds*, 926 P.2d 1218 (Colo.1996), a division of this court held that the trial court had not abused its discretion in admitting testimony concerning an expert witness' membership on the board of directors of a professional liability insurance carrier.

In *Evans*, the witness' board membership was current as of the time of trial. No evidence was offered to show that any defendant was insured by that insurance company, nor did any testimony deal with "insurance against liability" within the meaning of CRE 411.

Here, in contrast, testimony was elicited that the expert had been a co-founder of the insurance trust, that he had served on its board of directors only until 1982, and that the trust had been formed, initially, to accept membership from a limited number of dentists who had good practice standards and who had engaged in continuing education. The testimony was offered to show a predisposition by the expert witness to believe that defendant, as well as all dentists insured by the trust, was "above average" in his practice and procedure.

However, in contrast to the witness in *Evans*, the witness here had no knowledge of the trust's current procedures or require-

ments, and his only connection to the trust was that he was an insured. Regardless of the original policies of the trust, or how the trust had determined, in the past, whom it insured, the expert had no knowledge of the trust's current philosophies or criteria for screening, insuring, or excluding dentists.

Because any meaningful connections the expert had had with the trust had ceased as of 1982, the evidence was not probative of bias. Therefore, admission of this testimony was error. *See People v. Simmons, supra.*

### D.

■ We specifically reject plaintiff's argument that, because the professional liability insurance here was provided by a self-insured dentists' trust and not by a typical insurance company, the trial court was correct in admitting evidence that the trust would pay any judgment rendered against defendant.

There is no evidence in the record to support a conclusion that the trust's insureds would experience an onerous premium increase or experience a "call for reserve funds" based on a single jury verdict. *See Davila v. Bodelson,* 103 N.M. 243, 704 P.2d 1119 (N.M.App.1985)(precluding evidence of expert's membership in state mandated "Patient Compensation Fund"); *Golden v. Kishwaukee Community Health Services Center, Inc., supra; Patton v. Rose, supra.* Indeed, the insurance trust here insured 80% of Colorado's dentists as of the time of trial. *See* § 13–64–301, C.R.S.1998(dentists required to carry liability insurance). Hence, the impact of any one verdict would not affect premiums significantly, if at all.

Consequently, in light of its prejudicial impact, this evidence should not have been admitted.

■ The cumulative impact of these errors improperly diverted the jury's attention from the proper issues and caused defendant prejudice. *See People v. District Court,* 869 P.2d 1281 (Colo.1994). Thus, the judgment must be reversed.

### II.

Because certain other issues presented in this appeal may arise on retrial, we address them here; however, in light of our reversal of the judgment on the insurance issue, we do not specifically rule on defendant's contention that they also warrant reversal.

### A.

■ Defendant contends the trial court erred in allowing evidence of his statements to plaintiff that he was "sorry" and "would do what he could" or "would make things right." We agree that, on retrial, such evidence should not be admitted.

### 1.

CRE 409 provides:

Evidence of furnishing or offering or promising to pay medical, hospital, or similar expenses occasioned by an injury is not admissible to prove liability for the injury.

■ Evidence of a defendant's offer to pay a plaintiff's medical expenses may not be admitted to establish a defendant's liability. *See Pennington v. Sears, Roebuck & Co.,* 878 P.2d 152 (Colo.App.1994).

CRE 409 was adopted verbatim from the Federal Rules of Evidence. *See* Fed.R.Evid. 409. It is the product of a desire to encourage humanitarianism. This goal would be undercut if an offer to pay medical expenses were penalized by allowing it as evidence against the payor. In addition, the inference that the conduct means anything other than humanitarianism is unreliable. P. Rothestein, *Federal Rules of Evidence* § 126.9 (1992).

Allowing this evidence of defendant's statements defeats the benevolent purpose of CRE 409, not only by hindering offers to assist with medical expenses and to compromise disputes, but by discouraging even simple expressions of sympathy, goodwill, and civil behavior. *See Denton v. Park Hotel, Inc.,* 343 Mass. 524, 180 N.E.2d 70 (1962)(common decency should not be penalized by treating such statements as admissions).

Therefore, such testimony should be excluded on retrial.

### 2.

■ Even though evidence that defendant tendered two checks to plaintiff to pay for her therapy expenses was not admitted, plaintiff's counsel asked defendant's expert: "Doctor, have you ever given a patient money?" This occurred before the court had ruled on defendant's motion *in limine* to exclude evidence of these checks. Defendant asserts that, on retrial, this question should not be allowed. We agree.

Plaintiff cannot do indirectly what she is forbidden to do directly. The line of questioning surrounding inquiry of the expert created the clear inference that defendant had paid for plaintiff's medical expenses. Since this violated the spirit of CRE 409, it should not occur on retrial.

### B.

■ Defendant further argues the trial court erred in not ruling on his objection, during closing argument, to plaintiff's attorney's comment on defendant's failure to call his dental assistant as a witness. We agree.

In *Howell v. Cussons,* 29 Colo.App. 572, 489 P.2d 1056 (1971), a division of this court held that a trial court had properly rejected a tendered instruction that allowed the jury to infer, from a party's failure to call her treating physician to testify, that his testimony would be adverse to her contentions. *See also CJI Civ.3d* 3:12 (1988).

Here, in rebuttal closing argument, plaintiff's counsel stated:

> And finally, sometimes in a trial it's the evidence not presented which is the most telling, and I'm going to tell you something to go back into that jury room with and you discuss it because I'm going to submit to you that this is the most important piece of evidence you have. And it was not evidence.
>
> [Plaintiff] testified that [the dental assistant] was there when [defendant] examined her. [Defendant] accepted that [the dental assistant] was probably with [defendant] when [defendant] examined [plaintiff] on the 13th. [The dental assistant] was right there. [The dental assistant], if she had something to say that would corroborate [defendant's] version of what happened, she would have testified and she did not.

Defense counsel immediately objected, but the court only asked plaintiff's counsel if he had completed his argument, and did not rule on the objection.

Plaintiff relies on *United States v. Mahone,* 537 F.2d 922 (7th Cir.1976) to argue that counsel's statement was proper comment. However, in that case, the court noted:

> The rule ... is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.

*United States v. Mahone, supra,* 537 F.2d at 926.

Here, the parties do not dispute that the testimony of this particular witness would not "elucidate the transaction." In her deposition, she had stated that she had no recollection of being present during plaintiff's treatment. Therefore, it was error for the trial court to, in essence, allow plaintiff's counsel to stress the "missing witness" as "the most important piece" of evidence at trial. Thus, similar argument should not be permitted on retrial.

### C.

■ Finally, defendant contends the trial court erred in allowing testimony of plaintiff's friend concerning the nature and extent of her own TMJ problems. We agree.

■ A trial court has broad discretion in determining the relevancy of evidence, and this decision will not be reversed unless it is shown there was an abuse of discretion. *People v. Schwartz,* 678 P.2d 1000 (Colo. 1984). To show an abuse of discretion, the trial court's decision must be manifestly arbitrary, unreasonable, or unfair. *People v. Gibbens,* 905 P.2d 604 (Colo.1995).

Here, the witness, plaintiff's next-door neighbor and friend, testified extensively concerning the problems she had experienced with her TMJ condition. She testified in detail about the particulars of her own TMJ dysfunction, her own emotional distress, and the extensive medical and dental treatments she had required.

Plaintiff argues that the testimony was relevant because it explained the "fear" plaintiff had of "ending up like her friend." However, it is clear from the record that the witness' TMJ dysfunction was markedly more severe than plaintiff's, that the witness' medical and surgical treatment was much more extensive than plaintiff's, and that the witness' economic consequences, pain, and distress were much more significant than plaintiff's. This witness' specific condition and experiences were simply not relevant to the issues in this case, and such testimony should not be permitted on retrial.

The judgment is reversed and the cause is remanded for a new trial consistent with the views expressed in this opinion.

Judge JONES concurs.

Judge TURSI * dissents.

Judge TURSI dissenting.

I respectfully dissent.

A reviewing court can conclude that a trial court abused its discretion only if the trial court's ruling is manifestly arbitrary, unreasonable, or unfair. *Hock v. New York Life Insurance Co.*, 876 P.2d 1242 (Colo.1994). Here, the majority concludes that the trial court abused its discretion in allowing cross-examination of an expert witness which tended to show the bias, prejudice, or partiality of the witness. However, in my view, that conclusion is without support in the record.

To understand the basis of my dissent, it is necessary first to recognize what this case is not about. It is not about two stockholders or two policy holders in an ordinary stock or mutual liability insurance company. It is about probable bias, prejudice, or partiality

as demonstrated by the evidence of the relationship between the defendant's expert and the defendant as members in a self-insured trust, a closed, group of select Colorado dentists.

Approximately two weeks before trial, defendant moved *in limine* pursuant to CRE 411 that plaintiff be prohibited from cross-examining his expert concerning possible bias because of their common membership in the insurance trust.

CRE 411 reads:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. *This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.*

The motion was submitted on depositions and affidavits. The trial court ruled that plaintiff could not introduce insurance to establish negligence, but the evidence of insurance could be introduced if relevant to bias or prejudice of the witness. Contrary to the majority, I perceive no abuse of discretion in that ruling and, hence, no reversible error.

As it appears from the record provided, a select group of Colorado dentists, rejecting the major malpractice insurance carriers and the malpractice insurance available through the Colorado Dental Association, have chosen instead jointly to self-insure each other under the umbrella of a trust. Defendant and his expert witness were members of that trust.

It is undisputed that, in case of a verdict against any member of the trust, the reserves derived from the premiums paid by this limited number of members are depleted *pro tanto*, and, in cases of verdicts ranging beyond the reserves, all members are required to absorb a proportionate part of the resulting economic burden.

Hence, the matter at issue here concerns, in essence, a select group of dentists, who

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1998

have chosen individually and jointly, to go "naked" of traditional malpractice insurance and, instead, to rely on their trust membership as a means of providing liability protection. *See* 3 R. Long, *Law of Liability Insurance* § 12–118, et seq. (1st ed.1999).

At trial, defendant's expert testified that he and six others had created the trust and that he had sat on the board during its first four years. The record discloses no changes in the trust since his services to it and he admitted that he "is still pretty intimate" with the details of the trust. When asked if he and defendant were insured by the same trust, he replied: "Thankfully so, yes." He said the purpose of the trust was to avoid the restraint of trade problems that arise with dental association insurance plans. He further testified that the purpose was to keep good quality dentists in the trust. Thus, dentists, otherwise licensed in Colorado, who could not be denied coverage by traditional insurance companies, could at the discretion of the trust be denied membership.

The expert also testified that, even before he met the defendant, he assumed that he was a "high quality" dentist because of his membership in the trust; that money for payment of malpractice settlements against members are paid out of the trust; and that, if needed, such settlements would result in a rise in premiums charged to all members.

In making the ruling at issue, not only did the trial court have the plain language of CRE 411 before it, but it had guidance from this court in *Evans v. Colorado Permanente Medical Group, P.C.*, 902 P.2d 867 (Colo.App. 1995). In *Evans*, we held it was within the sound discretion of the trial court to allow cross-examination of defendant's expert physician witness regarding his position on the board of directors of a physicians' insurance company. I am at a loss to understand the majority's reliance on facts in *Evans*, less probative of the tendency for bias then the facts here, to reject its application in this matter.

Citing CRE 411, the *Evans* court held that the fact that the expert had sat on a board of a physicians' malpractice insurance company at the time of trial had some tendency to make it more probable that the expert was biased. The court found sufficient evidence to create a tendency of bias and partiality from the fact that the expert witness was on the board of directors of an malpractice insurance company even though the defendant doctors were insured by a different company. Clearly under the facts here the reasonable probability for bias, prejudice, and partiality is more direct and less attenuated than in *Evans*.

CRE 411 when read in its entirety makes a strong case for affirmance of the trial court. The right to cross-examine for bias and prejudice is properly preserved by the Rule. *See also People v. Jones*, 675 P.2d 9 (Colo. 1984)(bias may include partiality).

I am not persuaded that the majority correctly applies the majority rule to cases such as the one at issue here. *See* J. Galbreath, Annotation, *Propriety & Prejudicial Effect of Trial Counsel's Reference or Suggestion in Medical Malpractice Case That Defendant is Insured;* 71 A.L.R.4th 1025 (the exclusionary rule falls if there is evidence tending to establish bias, prejudice, or partiality, and even if error is assumed, the verdict will not be vacated absent a showing that the damages were excessive). *See Ede v. Atrium South OB–GYN, Inc.*, 71 Ohio St.3d 124, 642 N.E.2d 365 (1994)(a mutual common ownership case in which the court emphasized the equal importance of the second sentence of Ohio's counterpart to CRE 411 and warned against the tendency some courts have to a "Pavlovian" response at the mention of insurance). *See also Safeco Insurance Co. v. United States Fidelity & Guaranty Co.*, 101 N.M. 148, 679 P.2d 816 (1984).

Colorado courts have not been phobic concerning mention of insurance before jury panels in malpractice cases. *See Edwards v. Quackenbush*, 112 Colo. 337, 149 P.2d 809 (1944); *Bolles v. Kinton*, 83 Colo. 147, 263 P. 26 (1928). A recent survey of potential jurors revealed that 91.0% believed that lawsuits have been a cause of increased costs of insurance and 89.3% believed that lawsuits have been a cause of the increased costs of medical care. *See* Aronson, Rovella, Van Voris, *Jurors: A Biased Independent Lot*, vol. __, page __ (1988). Thus, as competent

counsel knows, the introduction of insurance into a malpractice case is, at best, a two-edged sword. Here, the choice was made because of the need to show bias, prejudice, or partiality.

The defendant's contention that the mere mention of insurance is so highly prejudicial that a new trial is mandated is belied by the fact that he does not challenge the amount of the verdict as excessive because of the alleged introduction of commonality of evidence. *See Langford v. Kosterlitz,* 107 Cal. App. 175, 290 P. 80 (1930). *See also* J. Galbreath, *supra.*

Further, I do not believe that it behooves appellate courts to try to micromanage cases remanded to the trial courts. Therefore, I am reluctant to address the alleged errors claimed by defendant which may not arise on a retrial and are admittedly not reversible error.

Nevertheless, because I believe that the admonishment in Part II of the majority opinion is an unwarranted invasion of the discretion of the trial court and that if followed, may lead to reversible error, I comment briefly. The threshold question in application of CRE 408 is whether the statements were made in settlement negotiations. There is not one scintilla of evidence that, at the time of plaintiff's angry confrontation with the defendant and his response, the settlement negotiations had been initiated. Therefore CRE 408 is not applicable here. *See Scott Co. v. MK–Ferguson Co.,* 832 P.2d 1000 (Colo.App.1991).

Accordingly, in my view the trial court did not commit reversible error in allowing the cross-examination of defendant's expert witness concerning the insurance trust, and thus, I would affirm.