**Isadore FREEDMAN and Helene Freedman, Plaintiffs–Appellants,**

v.

**KAISER FOUNDATION HEALTH PLAN OF COLORADO, a nonprofit corporation, Colorado Permanente Medical Group, P.C., a Colorado professional corporation, W.G. Wright, M.D. and Magdelyn Sabichi, M.D., Defendants–Appellees.**

No. 90CA1502.

Colorado Court of Appeals, Div. III.

July 2, 1992.

As Modified on Denial of Rehearing Oct. 8, 1992.

Certiorari Denied March 29, 1993.

Hochstadt, Straw & Strauss, P.C., Richard S. Strauss, Jordan Hochstadt, Denver, for plaintiffs-appellants.

Tilly & Graves, P.C., Greg L. Perczak, Christopher P. Seerveld, Amy L. Miletich, Denver, for defendants-appellees.

Opinion by Judge CRISWELL.

Plaintiffs, Isadore and Helene Freedman, appeal from a judgment entered on a jury verdict in favor of defendants, Kaiser Foundation Health Plan of Colorado (Kaiser), Colorado Permanente Medical Group, P.C. (Medical Group), W.G. Wright, and Magdelyn Sabichi, denying plaintiffs' claims of medical malpractice and from a pre-verdict dismissal of their breach of contract claims against Kaiser. We affirm.

Plaintiff Isadore Freedman developed a debilitating condition in his spine known as vertebral osteomyelitis. Plaintiffs claim that the individual defendants, who were members of Medical Group, a professional medical corporation, failed timely to diagnose or to institute treatment for the condition, the result of which failure was to render Isadore a permanent paraplegic. They also assert that Kaiser breached the contract between it and plaintiffs by failing to provide quality medical services to them.

## I.

Plaintiffs' first contention is that the trial judge should have disqualified himself because he had been insured with Kaiser some time in the past. We find no support for this contention.

A motion for disqualification must state facts which would allow a reasonable inference that the judge has a bias or prejudice that will interfere with his or her dealings with a party or that will give the impression of such bias or prejudice. This motion must contain facts and not merely conclusionary statements, conjecture, or innuendo. *Zoline v. Telluride Lodge Ass'n*, 732 P.2d 635 (Colo.1987).

■ Here, plaintiffs did not seek to have the trial judge disqualified until after the trial was completed. Then, after obtaining an unfavorable jury verdict, plaintiffs filed a motion for a new trial alleging that the trial judge's failure to disclose that he had, at some unspecified time in the past, been insured with Kaiser deprived them of a fair trial. Because that motion was not received by the court on a timely basis, the trial judge did not act upon it.

However, plaintiffs presented no specific allegations respecting the judge's past relationship with Kaiser, and they have not explained how a past contract with Kaiser that is no longer in existence could constitute the basis for a present bias or prejudice on his part or provide an impression of either. We conclude, therefore, that plaintiffs' showing was insufficient, as a matter of law, to require recusal.

## II.

Plaintiffs also contend that they were precluded from receiving a fair trial by virtue of the jury selection process. We find no merit to this contention.

■ C.R.C.P. 47(e)(7) requires that a party's challenge for cause be sustained if a juror's state of mind evidences "enmity against or bias to either party." However, this issue is a factual determination and is entrusted to the sound discretion of the trial court. Thus, the decision of a trial court to deny a challenge for cause will not be disturbed on review, absent a manifest abuse of that discretion. *Blades v. DaFoe,* 704 P.2d 317 (Colo.1985).

■ Plaintiffs argue that their challenge for cause should have been granted when one juror indicated that, because he and his family used Kaiser, it might be difficult for him to return a verdict against it. However, upon examination by the trial court, the juror said that he could set aside his feelings and render a fair and impartial verdict. Further, after the trial court denied plaintiffs' challenge for cause, the juror, in response to a question by plaintiffs, indicated that, if the evidence showed that the doctors had done something wrong, he

could return a verdict for plaintiffs. The trial court was entitled to accept these statements of the juror, which were made under oath. *See People v. Russo,* 713 P.2d 356 (Colo.1986).

■ Plaintiffs also contend that the trial court, on its own motion, should have declared a mistrial once it learned that one juror had travel plans that could have potentially interfered with his duties as a juror and another juror had a sister-in-law suffering from terminal cancer. However, plaintiffs at no time challenged either of these jurors. Therefore, any error was waived. *See Cruz v. Union Pacific R.R. Co.,* 707 P.2d 360 (Colo.App.1985).

## III.

Plaintiffs argue that the trial court erred in limiting the testimony of several expert witnesses. We disagree.

### A.

Plaintiffs contend the trial court improperly limited the testimony of an expert witness listed by defendants, but called by plaintiffs. We find no merit in this contention.

This expert, a physician specializing in the area of infectious diseases, was initially endorsed by defendants in their pre-trial disclosure statement. In that statement, defendants noted that this expert would be called to express opinions regarding the issue of the medical cause of Isadore's condition; nothing in the description of the testimony suggested that this expert would express any opinion with respect to the standard of care applicable to the individual physicians.

Plaintiffs' disclosure statement generally designated any witness endorsed by defendants. However, that statement did not amend or modify the description of the testimony that such witnesses might be expected to give, and plaintiffs did not seek to amend or to supplement that statement.

During the trial, plaintiffs called this expert witness in their case-in-chief and sought to elicit testimony as to the propriety of the treatment provided by the indi-

vidual defendants and other members of the Medical Group. However, the trial court concluded that, because plaintiffs had given no indication that the subject matter of the expert's opinions would be expanded beyond that designated in defendants' disclosure certificate, it would be prejudicial to defendants to allow such testimony. Accordingly, it refused to allow the expert to testify upon this subject.

C.R.C.P. 16(a)(IX) requires any party intending to use an expert witness to file a disclosure statement setting forth the substance of the opinions such witness is expected to express within 180 days after the case is at issue, but no later than 90 days before trial, whichever is earlier. A party may supplement this disclosure statement with respect to expert witnesses no later than 80 days prior to the trial. This supplement must include the subject matter of the expert's testimony and the reason the expert was not disclosed earlier. C.R.C.P. 16(b)(4). After receiving this supplemental statement, an opposing party who first learns of an expert witness as a result of the supplement may, within 15 days after its receipt, designate a rebuttal witness upon the subject. C.R.C.P. 16(g).

■ Thus, C.R.C.P. 16 requires designation of all expert witnesses and a description of their testimony at some reasonable time before trial. This is to prevent undue surprise and to give each party the opportunity to prepare adequately for trial. *Daniels v. Rapco Foam, Inc.*, 762 P.2d 717 (Colo.App.1988).

■ The opportunity for adequate preparation includes being afforded the opportunity to obtain an expert rebuttal witness upon being informed that the opposing party intends to elicit unfavorable testimony from a designated expert witness. C.R.C.P. 16(g).

■ We conclude that, if, as here, one party elicits opinions from another party's expert witness which are beyond the scope of the testimony described in the disclosure statement and are not of the kind which would impeach such testimony, the witness will be considered for this purpose as the opposing party's expert witness. As such, the party eliciting opinions beyond the scope of the initial disclosure statement must comply with the mandate of C.R.C.P. 16 to provide the other party with a supplemental description under C.R.C.P. 16(b)(4) of the testimony to be offered.

This conclusion is required by the underlying purpose of C.R.C.P. 16 to protect each party from undue surprise and to give to each the opportunity to prepare adequately for trial. For this purpose, it is irrelevant whether the expert has been previously undisclosed or is a witness who, while previously endorsed, is offered to express an opinion upon a subject matter not previously described.

■ If a party fails to comply with the requirements of C.R.C.P. 16(b)(4), the trial court may impose sanctions. These may include an order limiting the scope of the expert's testimony. *See Locke v. Vanderark*, 843 P.2d 27 (Colo.App.1992). Whether such sanction should be imposed rests within the sound discretion of the trial court, and absent a clear abuse of that discretion, its determination will not be disturbed. *Locke v. Vanderark, supra; United Bank v. One Center Joint Venture*, 773 P.2d 637 (Colo.App.1989).

Plaintiffs contend, nevertheless, that, despite their failure to supplement their disclosure statement, defendants were put on notice at the witness' deposition that plaintiffs intended upon eliciting a standard of care opinion at trial. Hence, plaintiffs argue, the trial court abused its discretion by refusing to allow the expert to express opinions other than those described in the disclosure statement. We disagree.

■ In order to sustain a claim based on medical malpractice, a plaintiff must normally first establish the controlling standard of care ordinarily possessed and exercised by members of defendant's school of medicine. *Melville v. Southward*, 791 P.2d 383 (Colo.1990). Here, however, the expert expressed no opinion in his deposition upon such a standard of care; nor did he express an opinion that defendants fell below such standard.

Further, plaintiffs specifically informed defendants that, other than the single expert that plaintiffs had designated as a standard of care witness, no other witness would be asked to express any such opinion.

Under these circumstances, while the trial court might have chosen to impose some lesser sanction, we cannot conclude that it abused its discretion in limiting the expert's testimony to those topics contained in defendants' disclosure statement.

### B.

Plaintiffs also argue that the trial court erred in precluding one of their expert witnesses from expressing a standard of care opinion because the description contained in the plaintiffs' disclosure statement failed to put defendants on notice that this witness would render such an opinion. Again, we conclude that the trial court did not abuse its discretion.

If a party attempts to elicit from an expert witness testimony beyond that described in the disclosure statement, the trial court may exclude such testimony. Absent an abuse of its discretion, the trial court's decision will not be overturned. *United Bank v. One Center Joint Venture, supra.*

In plaintiffs' supplemental disclosure certificate, they noted that the named expert witness would testify "that the surgical procedures undertaken in this case were undertaken too late." However, in this same disclosure statement plaintiffs specifically designated another expert witness to testify that defendants' actions "fell below generally accepted standards of care and skill for physicians...." The court determined that it was reasonable for defendants to conclude that this difference in descriptive language, considered in light of plaintiffs' express written representation as to their intent to use only one standard of care expert, meant that the second expert was to testify only upon the issue of causation. Thus, it determined that plaintiffs did not adequately notify defendants that they intended to elicit a standard of care opinion from this witness.

Again, under these circumstances, we conclude that the trial court did not abuse its discretion in limiting the testimony of plaintiffs' expert to those issues specifically delineated in the supplemental disclosure statement.

### IV.

Plaintiffs also contend that the trial court erred in dismissing their breach of contract claim against defendants. We disagree.

Plaintiffs assert that, because Kaiser contractually agreed to provide medical services to them, it also agreed to insure against any negligence on the part of any physician performing services pursuant to the Kaiser contract. However, the contract between the parties, as the trial court correctly noted, provides that the specific medical services will be provided by independent contractors and that those independent contractors are to be solely responsible to the policy subscriber for the rendered services.

Further, it is undisputed that Kaiser is a health maintenance organization (HMO) and is, therefore, governed by the Colorado Health Maintenance Organization Act, § 10–17–101, C.R.S., et seq. (1987 Repl.Vol. 4A). Section 10–17–125(3), C.R.S. (1987 Repl.Vol. 4A) provides that an HMO "shall not be deemed to be practicing medicine and shall be exempt from the provisions of laws relating to the practice of medicine."

Because an HMO is specifically precluded from practicing medicine, no HMO can direct the actions of the independent physicians with whom it contracts. Thus, we conclude that the concept of respondeat superior cannot be invoked to make an HMO responsible for the medical malpractice of those independent contractor physicians that it is statutorily precluded from directing or controlling. *See Moon v. Mercy Hospital,* 150 Colo. 430, 373 P.2d 944 (1962).

Plaintiffs here did not allege that Kaiser itself was actively negligent in selecting the physicians who were to render services

to plaintiff. Hence, we conclude that the trial court committed no error in dismissing plaintiffs' breach of contract claim.

## V.

 Plaintiffs further argue that the trial court erred in failing to instruct the jury with respect to the liability of physicians acting jointly as described in *CJI–Civ.3d* 15:10 (1989). We again disagree.

*CJI–Civ.3d* 15:10 states:

> When two or more physicians expressly or impliedly agree to work with each other to treat or care for a patient's injury or condition, each physician is legally responsible to the patient for any negligence of the other physicians arising out of and within the scope of their agreement and to treat or care for that injury or condition.

Before one physician may be held responsible for the negligence of another physician, as contemplated by this jury instruction, it must be shown that the other physician was negligent. Here, plaintiffs originally named four physicians in their complaint, but later dismissed two of them. The jury found that the other two had not been negligent. Hence, because no physician was found to have been negligent, the error, if any, in failing to instruct as requested was harmless. *See Francis v. O'Neal*, 127 Colo. 432, 257 P.2d 973 (1953).

## VI.

Plaintiffs finally assert that the trial court erred in failing to instruct the jury on the doctrine of *res ipsa loquitur*. We disagree.

 A trial court must instruct upon the principles of *res ipsa loquitur* if, viewed in the light most favorable to plaintiff, the evidence is sufficient to establish a prima facie case for its application. *Ravin v. Gambrell*, 788 P.2d 817 (Colo.1990).

Our supreme court has held that, to establish a prima facie case of *res ipsa loquitur*, a plaintiff must present evidence that:

(1) the event is the kind which ordinarily does not occur in the absence of negligence;

(2) responsible causes other than the defendant's negligence are sufficiently eliminated; and

(3) the presumed negligence is within the scope of defendant's duty to the plaintiff.

*Ravin v. Gambrell, supra.*

 Here, plaintiffs failed to eliminate sufficiently causes other than the alleged negligence of the individual physicians. Indeed, plaintiffs produced evidence that it was the independent negligence of a surgeon, who was not a member of Medical Group and who acted solely as a consultant, that caused their damage. Hence, the trial court did not err in failing to instruct upon the doctrine of· *res ipsa loquitur.*

The judgment is affirmed.

METZGER and NEY, JJ., concur.