Susan M. EVANS, Individually, and as Personal Representative of the Estate of Michael D. Evans, Deceased, and Keith A. Evans, Melinda N. Evans and Rebecca D. Evans, by their next friend, Susan M. Evans, Plaintiffs–Appellees and Cross–Appellants,

v.

COLORADO PERMANENTE MEDICAL GROUP, P.C., David M. Guidot, M.D., Joan Bodak, and Bonnie Ricke, Defendants–Appellants and Cross–Appellees.

No. 93CA1044.

Colorado Court of Appeals,
Div. I.

Feb. 23, 1995.

Rehearing Denied March 30, 1995.

Certiorari Granted Aug. 28, 1995.

Fitzgerald Law Offices, Robert M. Fitzgerald, Lohf, Shaiman & Jacobs, P.C., John C. Steele, Denver, for plaintiffs-appellees and cross-appellants.

Pryor, Carney and Johnson, P.C., Elizabeth C. Moran, Scott S. Nixon, and Thomas L. Roberts, Englewood, for defendants-appellants and cross-appellees.

Opinion by Judge CASEBOLT.

In this medical malpractice action, defendants, Colorado Permanente Medical Group, P.C., David M. Guidot, M.D., Joan Bodak, and Bonnie Rickie, appeal the judgment entered upon a jury verdict awarding damages for the wrongful death of Michael D. Evans. Plaintiffs, Susan M. Evans as an individual and as next friend of Keith A. Evans, Melinda N. Evans, and Rebecca D. Evans, and as representative of the estate of Michael D. Evans, cross-appeal the trial court's dismissal of their claims against then-defendant Kaiser Foundation Health Plan of Colorado (Kaiser) and the court's reduction of the award of damages. We modify the judgment, and as modified, affirm.

Plaintiffs brought this action alleging that defendants, and certain employees of Colorado Permanente Medical Group, P.C., were negligent in failing to diagnose Michael D. Evans' rare bacterial infection when he was seen at the Kaiser Urgent Care Clinic. Evans later died because of this infection. Plaintiffs also asserted that Kaiser, a health maintenance organization (HMO) that provided insurance coverage and other services to Evans, breached its duty of care and contractual obligation to provide "health care services" to Evans.

The trial court granted Kaiser's pretrial motion for summary judgment, finding that plaintiffs' allegations failed to state cognizable claims against Kaiser under *Freedman v. Kaiser Foundation Health Plan,* 849 P.2d

811 (Colo.App.1992) and the Colorado Health Maintenance Organization Act, § 10–16–421(3), C.R.S. (1994 Repl.Vol. 4A).

Plaintiffs' complaint further sought punitive damages. During trial, after the presentation of plaintiffs' case, the court directed a verdict for the defendants on this claim.

The remaining claims were submitted to the jury, which awarded the plaintiffs in excess of $2 million in damages. In a post-trial hearing, the trial court reduced the award for past and future non-economic losses to $250,000, reduced the award for past medical expenses that had been paid by Kaiser under its contract, and made other adjustments. This appeal followed.

## I.

Defendants first assert that the trial court erred in denying their motion to stay the court proceedings and compel arbitration. We disagree.

Evans was covered for health care services with Kaiser by virtue of the contract between Kaiser, his employer, and himself. The terms of Kaiser's group contract with Evans' employer included a clause requiring arbitration of all disputes between the member and Kaiser, its employees, and contracting physicians. This clause provided:

[A]ny claim arising from an alleged violation of a duty incident to this agreement, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration if the claim is asserted: (1) By a Member, or a member's heir or personal representative, or by a person claiming that a duty to him or her arises from a Member's relationship with Health Plan, Hospitals or Medical Group incident to this agreement ... (2) For any reason, including, but not limited to, death, mental disturbance, bodily injury or economic loss arising from the rendition or failure to render services or the provision or failure to provide benefits under the Agreement ... (3) For monetary damages ... (4) Against one or more of the following ... (a) Health Plan, (b) Hospitals, (c) Medical Group, (d) Any Physician, or (e) Any employee or agent of the foregoing.

In addition, Evans' application for enrollment to the Kaiser Plan provided that any claims for money damages would be submitted to binding arbitration.

The trial court invalidated this clause, concluding that it violated the Health Care Availability Act, § 13–64–403, C.R.S. (1994 Cum.Supp.) (HCAA). Consequently, it ruled that arbitration of plaintiffs' claims was not required and denied the motion to stay the proceedings.

■ The HCAA imposes requirements as to the language, form, and execution of arbitration provisions in agreements for the provision of medical services. Those requirements apply when there is a dispute as to the alleged professional negligence of any "health care provider." Section 13–64–403(3), C.R.S. (1994 Cum.Supp.) specifies that any such agreement must contain the precise statutory language delineated therein, informing the patient, among other things, that (1) any medical malpractice claims will be submitted to binding arbitration and not determined by lawsuit; (2) the patient has the right to seek legal counsel concerning the agreement and has a right to rescind the agreement within ninety days after signature by both parties; and (3) both parties have agreed to use arbitration in lieu of any court proceeding.

In addition, immediately before the signature lines on any such agreement, a notice must be printed in at least ten-point, bold-faced type, which must state as follows:

NOTE: BY SIGNING THIS AGREEMENT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL BINDING ARBITRATION RATHER THAN BY A JURY OR COURT TRIAL.

YOU HAVE THE RIGHT TO SEEK LEGAL COUNSEL AND YOU HAVE THE RIGHT TO RESCIND THIS AGREEMENT WITHIN NINETY DAYS FROM THE DATE OF SIGNATURE BY BOTH PARTIES UNLESS THE AGREEMENT WAS SIGNED IN CONTEMPLATION

OF HOSPITALIZATION IN WHICH CASE YOU HAVE NINETY DAYS AFTER DISCHARGE OR RELEASE FROM THE HOSPITAL TO RESCIND THE AGREEMENT.

NO HEALTH CARE PROVIDER SHALL WITHHOLD THE PROVISION OF EMERGENCY MEDICAL SERVICES TO ANY PERSON BECAUSE OF THAT PERSON'S FAILURE OR REFUSAL TO SIGN AN AGREEMENT CONTAINING A PROVISION FOR BINDING ARBITRATION OF ANY DISPUTE ARISING AS TO PROFESSIONAL NEGLIGENCE OF THE PROVIDER.

NO HEALTH CARE PROVIDER SHALL REFUSE TO PROVIDE MEDICAL CARE SERVICES TO ANY PATIENT SOLELY BECAUSE SUCH PATIENT REFUSED TO SIGN SUCH AN AGREEMENT OR EXERCISED THE NINETY–DAY RIGHT OF RESCISSION.

Defendants and Kaiser concede that the contract between Evans and Kaiser did not comply with the requirements of the HCAA. However, they argue that the HCAA did not apply to this contract for two reasons: (1) Kaiser, as an HMO, does not fall within the definition of a "health care provider"; and (2) the provisions of the HCAA conflict with, and are controlled by, the provisions of the HMO Act, § 10–16–409, C.R.S. (1994 Repl.Vol 4A), which permits health maintenance organizations to establish their own reasonable procedures for dispute resolution. We reject these contentions because we conclude that, regardless of whether Kaiser is a health care provider, the agreement to arbitrate professional negligence claims obtained on behalf of those persons or entities that unquestionably *are* health care providers must comply with the provisions of the HCAA. Moreover, under this analysis, no conflict between the HCAA and the HMO Act exists.

Under the terms of § 13–64–403(2), C.R.S. (1994 Cum.Supp.), we must determine: (1) whether the claims here involve a dispute as to professional negligence of a health care provider; (2) whether the agreement here involves the provision of medical services; and (3) whether the agreement contains a binding arbitration provision for any such dispute.

■ First, the defendants here include a doctor, two nurses, and a professional entity comprised of physicians. Each of these defendants is a "health care provider" within the meaning of the statute. A "health care provider" is defined as "any person licensed or certified by the State of Colorado to deliver health care and any clinic, health dispensary, or health facility licensed by the State of Colorado, ... includ[ing] [a] professional entity comprised of such health care providers." Section 13–64–403(12)(a), C.R.S. (1994 Cum. Supp.). Moreover, the claims here involve a dispute as to the professional negligence of the defendant health care providers.

Second, under the Kaiser contract, Kaiser "arranges and provides medical services directly rather than paying for services provided by others"; consequently, the agreement involves the provision of medical services. Additionally, the defendants here likewise provided "medical services."

Third, the agreement contains a provision for binding arbitration.

Because we determine that the provisions of § 13–64–403(2) apply, it follows that the quoted section of the agreement does not conform to the statute. Hence, that portion of the agreement is void.

■ Moreover, the fact that the agreement was obtained by Kaiser as an HMO does not change the analysis or create a conflict with the HMO Act. The HCAA applies to "*any* agreement for the provision of medical services" by a health care provider. Thus, because the statute focuses not on the status of the party that *obtains* the *agreement*, but rather upon the status of the party that *provides* the *services*, it applies whether the agreement was obtained by the physicians, nurses, or an HMO acting on their behalf. Furthermore, because the defendant doctor, nurses, and professional medical corporation are asserting that the agreement benefits them, we construe it to be an agreement "between" themselves and the patient within the meaning of § 13–64–403(1), C.R.S. (1994 Cum.Supp.).

■ Finally, we reject defendants' argument that the former HMO Act, recently repealed and reenacted as part of the Colorado Health Care Coverage Act, §§ 10–16–101 through 10–16–111 and §§ 10–16–401 through 10–16–428, C.R.S. (1994 Repl.Vol. 4A), conflicts with these provisions of the HCAA. While it is true that § 10–16–409, C.R.S. (1994 Repl.Vol. 4A) permits HMOs to establish reasonable dispute resolution procedures, this does not conflict with the requirement that, if those procedures include arbitration of professional negligence claims against health care providers who provide medical services, the patient must be notified of this fact in a manner that is consistent with the HCAA requirements.

Hence, the trial court did not err in denying defendants' motion to compel arbitration.

## II.

Defendants next contend that the trial court erroneously failed to dismiss the claim for exemplary damages in plaintiffs' complaint prior to trial. They further contend that plaintiffs did not present prima facie proof of a triable issue on this claim. Consequently, defendants reason, admission of irrelevant, prejudicial evidence occurred which requires a new trial. Under the circumstances present here, we disagree.

■ Section 13–64–302.5(3), C.R.S. (1994 Cum.Supp.) provides that a claim for exemplary damages may not be asserted in a medical malpractice action in the initial claim for relief. Only after the parties have substantially completed discovery and after a plaintiff has established prima facie proof of a triable issue of fact on this claim may the pleadings be amended to assert entitlement to such damages.

Here, plaintiffs asserted a general claim for "exemplary damages to any extent allowed by law" in the initial complaint. The trial court did not dismiss this claim from the initial pleading.

■ While we agree that the trial court erred in failing to dismiss plaintiffs' claim for exemplary damages from their initial pleading in accordance with § 13–64–302.5(3), C.R.S. (1994 Cum.Supp.), we conclude that this error does not warrant reversal. C.R.C.P. 61; *Askew v. Gerace*, 851 P.2d 199 (Colo.App.1992) (error is harmless when there is no prejudice to a substantial right of the party). The mere assertion of the claim *in the pleadings* did not cause sufficient prejudice to the defendants to require reversal, inasmuch as the claim was found to be sufficiently supported to allow its presentation in plaintiff's case-in-chief.

■ Next, we note the trial court determined that, based upon offers of proof before trial, there was sufficient evidence to allow plaintiffs to present the exemplary damages issue in their case-in-chief. The fact that it later directed a verdict against plaintiffs on this claim does not establish a violation of the prima facie proof requirement. The existence of a triable issue on liability for exemplary damages is established by showing a *reasonable likelihood* that the issue will ultimately be presented to the jury for resolution. *Leidholt v. District Court*, 619 P.2d 768 (Colo.1980). There is no requirement that presentation of the issue to the jury must be virtually certain before any evidence relevant to the claim may be submitted.

■ A trial court is granted wide latitude in determining the relevancy and admissibility of evidence, and its decision will not be disturbed absent a clear abuse of discretion. *People v. Young*, 710 P.2d 1140 (Colo.App. 1985). Because we find no abuse of discretion, we necessarily reject defendants' assertion that the trial court's failure to strike the exemplary damages claim or prohibit presentation of evidence at trial allowed plaintiffs to present irrelevant, prejudicial evidence to the jury.

## III.

Next, we reject defendants' argument that the trial court erred by permitting plaintiffs to cross-examine defendants' expert physician witness regarding his position on the board of directors of a physicians' insurance company.

■ The scope and limits of cross-examination for bias are within the trial

court's sound discretion, and its ruling on such matters will not be disturbed absent an abuse of that discretion. So long as the evidence is sufficiently probative of a witness' bias and does not unduly prejudice the opposing party, it is admissible. *People v. Walker*, 666 P.2d 113 (Colo.1983).

■ Cross-examination for bias is liberally permitted because bias is always relevant as discrediting the witness and affecting the weight of his or her testimony. *People v. Trujillo*, 749 P.2d 441 (Colo.App.1987).

■ Bias may include partiality. *See People v. Jones*, 675 P.2d 9 (Colo.1984). Thorough cross-examination allows inquiry into the motives of witnesses, and within broad limits any evidence tending to show bias or prejudice or to throw light upon the inclinations of witnesses may be permitted. *People v. Taylor*, 190 Colo. 210, 545 P.2d 703 (1976).

■ Defendants contend that admission of this evidence violated CRE 411 because the issue of liability insurance was improperly injected into the trial. CRE 411 provides that "evidence that a person is or is not insured against liability is not admissible upon the issue of whether he acted negligently or otherwise wrongfully." However, under that rule, evidence of insurance against liability may be offered for other purposes, including bias or prejudice of a witness.

■ In our view, CRE 411 is not directly applicable here. No evidence was offered to show that any defendant was insured by the malpractice insurance company of which the witness was a board member. As well, the testimony did not deal with "insurance against liability" within the meaning of CRE 411.

Moreover, to the extent that CRE 411 might be applicable, we conclude that admission under these circumstances was not an abuse of discretion. *See Lopez v. Southwest Community Health Services*, 114 N.M. 2, 833 P.2d 1183 (App.1992) (in a medical malpractice case no error arose by introduction of expert physician's curriculum vitae which listed positions held by doctor with a physician's liability insurance company and by

questioning him as to his relationship with that company).

Here, the witness' affiliation with the insurance company could have been viewed as a reason for him to slant his testimony. Consequently, questioning concerning his board membership was sufficiently probative of bias or prejudice. The trial court properly considered the proffered evidence outside the presence of the jury and determined that the danger of unfair prejudice did not outweigh its probative value. Moreover, the examination on this issue at trial was exceedingly brief; plaintiffs' direct questioning of the expert on whether his position would bias his testimony consisted of only three short questions.

Our conclusion is not changed by the fact that the witness rendered his written opinions *before* he became a board member. The pertinent testimonial inquiry concerning bias or prejudice occurs during questioning at trial. Absent circumstances not present here, generally any indications of a witness' bent, inclination, partiality, or preference prior to testifying at trial will be relevant, subject of course to the trial court's informed exercise of its discretion.

Therefore, we agree with the plaintiffs and the trial court that the expert's position on the board of a physicians' insurance company at the time he testified at trial had some tendency to make it more probable that the expert was biased. *See* CRE 401 (definition of "relevant evidence"). *See also People v. Trujillo, supra.* Under these circumstances, we conclude that there was no reversible error.

### IV.

In plaintiffs' cross-appeal, they first contend that the trial court erred in reducing the amount of non-economic losses awarded to plaintiffs from $1,002,176 to $250,000. We disagree.

Plaintiffs assert that the $250,000 limitation imposed for non-economic losses in wrongful death claims under § 13–21–203, C.R.S. (1994 Cum.Supp.) allows each *plaintiff* to recover that sum, rather than limiting the total recovery allowed in each *action.* In

support of this contention they insist that the wrongful death statute: (1) does not refer to "derivative claims"; (2) shifts from plural references in its language to singular references; and (3) does not state that the cap is on a "per action" basis.

Plaintiffs' assertions, however, ignore the trial court's determination that the damages limitations of the HCAA likewise limited their recovery to $250,000. Because we conclude that the provisions of the HCAA unambiguously limit recovery for non-economic damages against health care professionals to $250,000 for a course of care of one patient, we need not analyze the provisions of the wrongful death statute.

■■ Section 13–64–302, C.R.S. (1994 Cum.Supp.) provides, in pertinent part:

> The total amount recoverable for all damages for a course of care for all defendants in any civil action for damages in tort brought against a health care professional ... or a health care institution ... whether past damages, future damages, or a combination of both, shall not exceed one million dollars ... including any derivative claim by any other claimant, of which not more than two hundred fifty thousand dollars, present value per patient, including any derivative claim by any other claimant, shall be attributable to noneconomic loss or injury, as defined in section 13–21–102.5(2)(a) and (2)(b), whether past damages, future damages, or a combination of both....

In our view, this statute plainly limits recovery for non-economic losses to $250,000 per patient, per course of care, regardless of the number of plaintiffs or the number of defendants, and includes all derivative claims. By its plain terms, it applies "in any civil action for damages in tort against a health care professional."

■■ The supreme court has held that this statute applies in particular kinds of civil actions against particular types of defendants, *i.e.*, medical malpractice claims against "health care professionals." *Scholz v. Metropolitan Pathologists, P.C.*, 851 P.2d 901 (Colo.1993). Because this action is a civil claim for medical malpractice and all defen-

dants here meet the definition of health care professionals, § 13–64–202(4)(a), C.R.S. (1994 Cum.Supp.), the trial court correctly held that the statute was applicable. And, contrary to plaintiffs' contention, we find nothing in the HCAA to indicate that the damages limitations apply only to patients who survive their course of treatment. *See Scholz v. Metropolitan Pathologists, P.C., supra;* § 13–64–102, C.R.S. (1994 Cum.Supp.).

Plaintiffs, nevertheless, assert that, under *General Electric Co. v. Niemet*, 866 P.2d 1361 (Colo.1994), the $250,000 cap on damages must be applied to "each defendant" rather than upon a "total recovery" basis. There, the supreme court held that the statutory cap on damages contained in § 13–21–102.5, C.R.S. (1987 Repl.Vol. 6A), "applies to the liability share of each defendant in a case, and does not act as a cap on the total amount a plaintiff may recover." *General Electric Co. v. Niemet, supra*, at 1368.

We conclude that the reasoning of the *Niemet* court does not apply to the circumstances of this case. There, the court was interpreting the general damages statute, § 13–21–102.5, C.R.S. (1987 Repl.Vol. 6A), and did not consider the limitations of the HCAA. Here, however, the specific damage limitations of the HCAA govern because of the particular class of defendant involved, *Scholz v. Metropolitan Pathologists, P.C., supra*, and because the statute limits the total amount recoverable "for all defendants."

Accordingly, we conclude that plaintiffs' attempts to expand the limitations on non-economic damages to "each plaintiff" or "each defendant" must fail.

## V.

Next, plaintiffs argue that the trial court erred in deducting the sum paid by Kaiser from the jury's award of medical and other health care expenses. The trial court determined that Kaiser, by virtue of providing Evans' health insurance, paid approximately $40,000 of the $46,000 in medical expenses incurred and awarded. It reasoned that to include the full medical expenses incurred in the final judgment would result in a double recovery to plaintiffs. We agree that the

trial court erroneously deducted the amount paid by Kaiser from the jury award.

Section 13–21–111.6, C.R.S. (1987 Repl.Vol. 6A) requires the trial court to deduct collateral source payments received by a party as compensation for his or her injury or loss from the amount of damages awarded for such injury or loss. The statute provides as an exception that a verdict is not to be reduced by amounts or benefits paid as a result of a contract entered into and paid for or on behalf of the plaintiff. *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070 (Colo. 1992).

Neither the collateral source rule nor the contract exception applies to payments by tortfeasors. *Simon v. Coppola*, 876 P.2d 10 (Colo.App.1993) (Briggs, J., concurring). *See Smith v. Zufelt*, 880 P.2d 1178 (Colo.1994). However, the payments made by Kaiser were not payments made by that entity as a tortfeasor. The payments were admittedly made by Kaiser as the health insurer for Evans under its contract. Thus, the statute applies here, and the contract exception therefore operates. *Van Waters & Rogers Inc. v. Keelan, supra.*

Accordingly, the trial court erred in deducting the amount paid by Kaiser from the verdict. We therefore modify the judgment to reinstate the jury's award for $46,000 for medical expenses.

## VI.

Plaintiffs finally argue that the trial court erred in granting summary judgment which dismissed their breach of contract and negligence claims against Kaiser. Under the circumstances present here, we disagree.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987); C.R.C.P. 56(c). When a motion for summary judgment is made, an adverse party may not rest upon the mere allegations or denials of the opposing party's pleadings, but must set forth specific facts showing that there is a genuine issue for trial. C.R.C.P. 56(e).

A moving party may request summary judgment with or without supporting affidavits. *Torbit v. Griffith*, 37 Colo. App. 460, 550 P.2d 350 (1976); C.R.C.P. 56(b). The absence of specific factual allegations by the responding party may support summary judgment for a defendant. *Norton v. Dartmouth Skis, Inc.*, 147 Colo. 436, 364 P.2d 866 (1961).

Once the moving party affirmatively shows specific facts probative of its right to judgment, it becomes necessary for the nonmoving party to set forth facts showing there is a genuine issue for trial. *Meyer v. Schwartz*, 638 P.2d 821 (Colo.App.1981). A genuine issue cannot be raised by counsel simply by means of argument. *Sullivan v. Davis*, 172 Colo. 490, 474 P.2d 218 (1970).

Here, plaintiffs asserted that Kaiser breached its contract with Evans and was likewise negligent by failing to provide "health care services." Kaiser moved for summary judgment on the grounds that the negligence and contract claims were in fact claims for medical malpractice; that there was no factual distinction between "health care services" and "medical services"; that Kaiser cannot practice medicine; and that, by virtue of *Freedman v. Kaiser Foundation Health Plan*, 849 P.2d 811 (Colo.App.1992), such claims could not be pursued.

In response, plaintiffs attempted to distinguish between "health care services" and "medical services," acknowledging that the *Freedman* holding barred claims for provision of the latter. However, plaintiffs did not articulate any specific services or procedures that they claimed Kaiser failed to provide or negligently provided.

For the first time on appeal, plaintiffs have specifically articulated their claims. They contend that the services contracted for and/or undertaken included: (1) the ownership and operation of the telephone call-in system; (2) the ownership and operation of the telephone-message taping system; (3) the ownership and operation of the telephone-message faxing system; (4) the ownership and operation of the medical records system; (5) the ownership and operation of the clinic system, and the particular clinic

where Evans reported the day before he died: (6) the staffing of the Kaiser facilities; (7) the scheduling of physicians, nurses, and staff and the scheduling of patients; and (8) the promulgation of policies and procedures.

These specific items, however, were not pleaded or placed before the trial court for its review, even though the case was only sixty days from trial at the time the motion for partial summary judgment became at issue. No request for extension under C.R.C.P. 56(f) was made by plaintiffs, nor did they request a continuance of any kind. We conclude that, under these circumstances, summary judgment was properly granted.

■ In Colorado, a breach of contract or tort claim may not be brought against an HMO, such as Kaiser, for negligently providing or failing to provide medical services. Section 10–16–421(3), C.R.S. (1994 Repl.Vol. 4A); *Freedman v. Kaiser Foundation Health Plan, supra.* Although plaintiffs attempt to distinguish *Freedman* by arguing that Kaiser negligently failed to provide "health care services" rather than "medical services," we disagree that any valid distinction was factually presented to the trial court in a timely manner which would render *Freedman* inapplicable.

Accordingly, the trial court was correct in granting summary judgment in favor of Kaiser on plaintiffs' negligence and breach of contract claims against it.

Therefore, the judgment is modified such that the jury's award of $46,000 for medical expenses is reinstated, and, as modified, the judgment is affirmed.

METZGER and MARQUEZ, JJ., concur.