Barbara Lou **WALLACE** and Ravene **Wallace,** Appellants,

v.

Oon **LEEDHANACHOKE, M.D.,** Appellee.

No. 95–CA–2031–MR.

Court of Appeals of Kentucky.

Dec. 6, 1996.

Discretionary Review Denied by Supreme Court Aug. 27, 1997.

Gary L. Gardner, Anne Milton McMillin, Louisville, for Appellant.

Christopher P. O'Bryan, Cathleen A. Charters, James Grohmann, Louisville, for Appellee.

Before COMBS, EMBERTON and GUDGEL, JJ.

COMBS, Judge.

Barbara Lou Wallace and Ravene Wallace appeal from a judgment based on a jury verdict rendered in favor of Dr. Oon Leedhanachoke in a medical malpractice action. Appellants alleged that Dr. Leedhanachoke had treated Barbara Wallace negligently when she sought medical treatment for the removal of her gallbladder.

The sole issue presented for our consideration is whether the trial court erred in refusing to permit plaintiff's counsel to ask Leedhanachoke's medical expert, Dr. Sachetello, whether he, too, was insured by the defendant's professional liability carrier. The Wallaces contend that they should have been allowed to elicit this evidence to show the witness's bias or prejudice in favor of Leedhanachoke. Having closely considered the record and the law, as well as the written and oral arguments of counsel, we cannot conclude that the trial court abused its discretion by prohibiting this line of questioning. Finding no error, we affirm the judgment.

In Kentucky, cross-examination is not limited solely to matters addressed in the witness's direct testimony, but it may extend to any matter relevant to any issue in the case. Ky.R.Evid. (KRE) 611(b). However, the trial court retains broad discretion to control the scope and limits of cross-examination, and the exercise of that discretion does not constitute reversible error unless clear abuse can be shown.

Ky.R.Evid. (KRE) 411 provides as follows:

**Rule 411.  LIABILITY INSURANCE**

Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. **This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of** agency, ownership, or control, **or bias or prejudice of a witness.** (Emphasis added).

The Wallaces maintain that avowal testimony from Sachetello indicating that both he and the defendant were insured by the same carrier, Kentucky Medical Insurance Company, a mutual company, should not have been excluded under Rule 411 because it revealed an underlying bias on the part of the witness. They argue that a reduction of successful malpractice claims against the company's insureds translates into lower premium rates for member doctors. Thus, each insured

doctor, including Sachetello, has a direct financial stake in the outcome of all malpractice actions. Reiterating the arguments made at trial, the Wallaces contend that they were entitled to present evidence demonstrating Sachetello's bias.

This issue appears to be one of first impression in the Commonwealth. Neither party has presented case law from this jurisdiction directly on point, and our research has uncovered nothing of precedential value from Kentucky. Other jurisdictions, however, have addressed this issue directly, and although their holdings and conclusions are not binding on this court, we look to their reasoning and analysis for guidance.

The Supreme Court of Alabama has considered more than once the issue of whether evidence of a shared insurance interest between a defendant-physician and his medical expert is admissible in a malpractice action. As recently as 1993, that court reaffirmed what has been its long-standing position as follows:

> The potential for bias on the part of any witness due to his coverage under a professional liability policy is so remote as to be virtually non-existent. When this remote potential for bias is balanced against the overwhelming prejudicial effect of allowing evidence of professional liability insurance, it becomes evident that admission of such evidence would be error.

*Pattillo v. Sanchez,* 614 So.2d 443, 447 (Ala. 1993), *citing, Otwell v. Bryant,* 497 So.2d 111, 115 (Ala.1986). In 1986, the *Otwell* court had carefully distinguished a case in which the defendant-physician's expert was merely a policyholder from a situation where a witness was a member of the board of directors *and* was employed by a liability insurer. The court reasoned that under certain circumstances a witness may indeed have a sufficient degree of "connection" with the liability insurance carrier to justify allowing proof of this relationship as a means of attacking the credibility or bias of the witness; but in a case where the requisite "connection" was missing, there was no legitimate basis for injecting the issue of liability insurance into the proceedings. *Id.* at 114. Addressing the specific facts before it, the court held as follows:

> The coincidental fact that the witness and the defendants are both insured by MASA [Mutual Assurance Society of Alabama] is not an adequate degree of connection to counter-balance the undue prejudice that will result to the defendants through alerting the jury to the existence of liability insurance.

*Id.*

In *Patton v. Rose,* 892 S.W.2d 410 (Tenn. App.1994), the Court of Appeals of Tennessee also analyzed the issue. Referring to Rule 411 and Rule 403 of the Tennessee Rules of Evidence and to its review of the record, that court determined that the trial court had properly balanced the relevancy of the offered evidence against its prejudicial effect and that it had not abused its discretion by excluding evidence indicating that the defendant-physician and his expert witness were insured by the same carrier.

Similarly, in *Barsema v. Susong,* 751 P.2d 969, 973 (Ariz.1988), the Supreme Court of Arizona concluded as follows:

> In all but the exceptional case, a trial judge applying Rule 403 *should hold* that the danger of prejudice resulting from the interjection of insurance evidence substantially outweighs the probative value of evidence that the witness and a party have a common insurer. *In all but exceptional cases,* therefore, the type of evidence that concerns defendant would not be admitted if the trial court follows the process contemplated when Rules 411, 401 and 403 are invoked. (Emphasis added).

Significantly, the court reached this conclusion with an awareness of the fact that the common insurance company was a captive insurer with a relatively small premium pool. The probative impact of such evidence under this factual scenario as to likelihood of possible witness bias was more readily apparent than in the case *sub judice.* Nonetheless, the court declined to admit the testimony, finding that possible prejudice resulting from allusions to insurance coverage more than off-set any probative value it may indicate as to witness bias.

More recently, in *Evans v. Colorado Permanente Medical Group, P.C.*, 902 P.2d 867 (Colo.App.1995), *cert. granted,* the Colorado Court of Appeals also considered the issue. It noted that Colorado's trial courts have broad discretion with respect to the admission of evidence and the direction of cross-examination. With reference to Rule 411 of its evidence code, the court determined that the trial court had not erred *by allowing* the plaintiff-patient to cross-examine the defendants' expert physician regarding his position on the board of directors of a physicians' insurance company. It held that the fact that the witness held a management position with the insurance company at the time that he testified at trial might result in a tendency or even a probability that the expert was biased in favor of the defendant-physician. The reviewing court was satisfied that the trial court had properly weighed the probative value of the testimony against its prejudicial effect and that it had correctly concluded that its decision to permit the evidence did not constitute an abuse of discretion.

Several other jurisdictions have adopted the balancing test of evaluating the possibly prejudicial effect of the proposed testimony against its potentially probative value in showing bias of a witness. *See generally Lopez v. Southwest Community Health Serv.*, 114 N.M. 2, 833 P.2d 1183 (App.1992) (trial court did not abuse its discretion by allowing the plaintiff to cross-examine medical expert with respect to his relationship to certain professional liability insurance companies); *Davila v. Bodelson*, 103 N.M. 243, 704 P.2d 1119 (App.1985) *cert. denied,* 704 P.2d 431 (1985) (finding no abuse of discretion where trial court limited cross-examination of the defense witness concerning his liability toward a common patient compensation fund); *Mendoza v. Varon*, 563 S.W.2d 646 (Tex.App.1978) (trial court did not abuse its discretion by excluding testimony that defendant-physician and his expert were insured by the same insurance company because the witness had no direct interest in the outcome of the litigation despite fact that insurance rates might be affected); *Shamblin v. Albright*, 278 Ark. 565, 647 S.W.2d 470 (1983) (argument that defense expert's insurance might go up in the event of a verdict in favor of plaintiff was considered too speculative by the trial court and any probative value it might have was outweighed by prejudicial impact; therefore, trial court did not abuse its discretion by refusing to permit this line of cross-examination); *Kelley v. Wiggins*, 291 Ark. 280, 724 S.W.2d 443 (1987) (trial court did not abuse its discretion by allowing plaintiff to cross-examine defense expert as to whether he was insured and whether his premium rates would increase if a verdict was returned against the defendant-physician).

The Supreme Court of Ohio has also recently addressed this issue. In *Ede v. Atrium South OB–GYN*, 71 Ohio St.3d 124, 642 N.E.2d 365 (1994), the Ohio court held (over a strong and persuasive dissent) that evidence of a commonality of insurance interests between a physician charged with professional negligence and his expert witness was sufficiently probative of the expert's bias as to clearly outweigh any potential prejudice that the evidence of liability insurance might cause. In *Ede*, the common insurer was described as being a mutual insurance company, meaning that *each insured's policy* constituted evidence of *some fractional part ownership* in the company. This direct connection to the financial success of the company persuaded the court to reverse the trial court's judgment. It reasoned as follows:

> The trial court was not responsive to appellant's argument that as a fractional part-owner of [the company], [the expert's] own premiums might fluctuate due to the result of the case. Such testimony would have been of probative value.... [T]he trial court erred by grossly overestimating to what extent testimony that [the defendant] was insured would prejudice the jury.

The dissenting opinion expressed satisfaction that the trial judge had properly applied the balancing test of evidence rule 403 and that he had concluded that the danger of unfair prejudice arising from the jury's knowledge that the defendant had medical malpractice insurance substantially outweighed the probative value of informing the jury of a common insurance interest between the defendant and his expert witness. It also

pointed out that the *per se* rule adopted by the majority effectively and improperly divested the trial court of its discretion. Finally, the dissent criticized the majority for having substituted its judgment for that of the trial court.

After reviewing the rationales used by the majority of jurisdictions considering this issue along with the provisions of KRE 611, KRE 401, KRE 403, and KRE 411, we conclude that the Pike Circuit Court was required to balance the probative value of the evidence that the Wallaces were prepared to elicit from Sachetello against the prejudicial effect it may have produced before it permitted the cross-examination proposed by the plaintiffs. Under the facts of this case, we find that the trial court did not abuse its discretion by ruling inadmissible evidence that the defendant-physician and his expert shared the same liability carrier. The mere fact that the two physicians shared a common insurance carrier—absent a more compelling degree of connection—does not clearly evince bias by the expert, and its arguable relevance or probative value is insufficient to outweigh the well-established rule as to the inadmissibility of evidence as to the existence of insurance. There was no evidence offered to indicate that any verdict adverse to Leedhanachoke would have any effect whatsoever on Sachetello's relationship with his professional liability carrier or his insurance rates. Other than the coincidence of being an insured, Dr. Sachetello had no special relationship to the insurer which would give rise to any inference of bias in favor of Leedhanachoke. There was no showing of a limited insurance pool or of any fractional ownership interest by Dr. Sachetello in the insurance company. We cannot conclude that evidence indicating that Sachetello might experience rising insurance rates is so probative as to the issue of his credibility or bias as to outweigh the prejudicial import of evidence of insurance. We are not prepared to adopt a *per se* rule either permitting or prohibiting this line of cross-examination. Instead, we adopt the balancing test discussed above to allow trial courts to exercise their broad discretion on a case-by-case basis.

Finding no error, we affirm the judgment of the Pike Circuit Court.

All concur.