1998 OK 33

Randy MILLS and John Mills, as individuals, and as best friends and next-of-kin to V. Lucille Mills, deceased, Appellants,

v.

Martin H. GROTHEER, M.D., Appellee.

No. 88906.

Supreme Court of Oklahoma.

April 14, 1998.

Rehearing Denied May 20, 1998.

Richard A. Shallcross, Brewster, Shallcross & De Angelis, Tulsa, for Appellants.

Michael Atkinson and Marthanda J. Beckworth, Atkinson, Haskins, Nellis, Boudreaux, Holeman, Phipps & Brittingham, Tulsa, for Appellee.

Karen M. Grundy, Best Sharp Holden, Best, Sullivan & Kempfert, Tulsa, for Amicus Curiae, Oklahoma State Medical Association.

HODGES, Justice.

¶ 1 This appeal presents the issue of whether common membership in a mutual medical malpractice insurance company can be used to impeach a defense expert in a medical malpractice action. It is an issue of first impression. Other assignments of error have been raised. However, under the facts of this case no reversible error has been demonstrated.

¶ 2 This is a wrongful death case in which Plaintiffs, Randy and John Mills, claim that Defendant, Dr. Martin H. Grotheer, M.D., was negligent in his care of their mother. At trial, Plaintiffs sought to impeach Defendant's expert witness, also a physician, by demonstrating financial bias. Specifically, they wished to question him concerning his membership in Defendant's mutual insurance company,[1] Physicians Liability Insurance Company (PLICO). PLICO is open to members of the Oklahoma State Medical Association.[2] The trial court granted Defendant's motion *in limine* and prohibited any mention of PLICO at trial to impeach the defense witness. Trial of this case resulted in a jury verdict for Defendant.

I.

¶ 3 The trial court is permitted broad discretion in determining the relevance of evidence. Decisions regarding relevance of evidence and its alleged prejudice to the other party will not be overturned absent an abuse of discretion. *Jordan v. Cates*, 935 P.2d 289, 293 (Okla.1997).

¶ 4 The Oklahoma Evidence Code provides that all relevant evidence is admissible unless excluded by rules of evidence,

---

1. The object of mutual insurance is "to provide insurance protection at cost." 1 *Couch on Insurance* § 1:32 (3d ed.). It "exists where several persons have joined together for their united protection, each member contributing to a fund for the payment of the losses and expenses." *Id.,* at § 39:15.

2. The Oklahoma State Medical Association (OSMA) is "open to physicians holding an M.D. degree who are licensed to practice medicine in Oklahoma, and who are U.S. citizens or have filed a declaration of intent to become a U.S.

citizen." OSMA has 4,600 members. Oklahoma State Medical Association (last modified 3/17/98) <http://www.osmaonline.org/$.

   PLICO claims to be "a wholly owned subsidiary of OSMA and provides *the only occurrence—type professional liability insurance available in Oklahoma.* Over the years, aggressive action on the part of OSMA has saved Oklahoma physicians millions of dollars in insurance premiums. Coverage through PLICO is among the nation's most competitive and most stable." *Id.*

statute, or constitution. Okla. Stat. tit. 12, § 2402 (1991). By statute, the existence of liability insurance is never relevant to the issue of a defendant's negligence or wrongful action. *Id.* at § 2411. Credibility of a witness, however, is always relevant. *See Frierson v. Hines,* 426 P.2d 362, 364 (Okla.1967) ("cross-examination of a witness for purposes of eliciting facts to show bias, prejudice or friendship always is considered competent"). Thus, evidence of liability insurance may be offered for some other purpose, such as to demonstrate "agency, ownership, control, bias or prejudice of a witness." Okla. Stat. tit. 12, § 2411. But even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, undue delay, needless presentation of culmative evidence, or unfair and harmful surprise." *Id.* at § 2403. The question becomes whether such evidence is so probative as to be *per se* admissible, as urged by Plaintiff, or so unfairly prejudicial as to be *per se* inadmissible, as urged by Defendant, or subject to a balance of probative value and potential prejudice on the facts of each case.

█ ¶ 5 Oklahoma is not the first jurisdiction to confront this issue. Only one jurisdiction has adopted a *per se* rule in favor of the admission of such evidence. *See Ede v. Atrium South OB–GYN, Inc.,* 71 Ohio St.3d 124, 642 N.E.2d 365, 368 (1994) ("in a medical malpractice action, evidence of commonality of insurance interests between a defendant and an expert witness is sufficiently probative of the expert's bias as to clearly outweigh any potential prejudice evidence of insurance might cause"). No jurisdiction has held that it is *per se* an abuse of discretion to admit such evidence. "The preponderance of jurisdictions have adopted what is best characterized as a 'connections test' to determine whether prohibiting a plaintiff from establishing commonality of insurance between defendant and his expert witness in an effort to show bias is an abuse of discretion." *Warren v. Jackson,* 125 N.C.App. 96, 479 S.E.2d 278, 280—81 (1997) *cert. denied,* 345 N.C. 760, 485 S.E.2d 310—11. *See, e.g., Otwell v. Bryant,* 497 So.2d 111, 115 (Ala.1986) (remote potential for bias of witness based on common insurance with defendant must be balanced against overwhelming prejudicial effect of its admission); *Barsema v. Susong,* 156 Ariz. 309, 751 P.2d 969, 974 (1988) (danger of prejudice from evidence of common insurance outweighs probative value, but error to preclude evidence that witness was insurer's vice president and member of board of directors); *Kelley v. Wiggins,* 291 Ark. 280, 724 S.W.2d 443, 447 (1987) (no abuse of discretion in admission of evidence of common insurance following determination that probative value outweighed danger of prejudice); *Evans v. Colorado Permanente Medical Group,* 902 P.2d 867, 874 (Colo.Ct.App.1995) (expert's position on board of directors of defendant's insurer made it more probable that he was biased); *Golden v. Kishwaukee Community Health Services Center,* 269 Ill. App.3d 37, 206 Ill.Dec. 314, 320, 645 N.E.2d 319, 325 (1994) (evidence of common membership in mutual insurance company could be barred but evidence that one medical expert had performed significant economic services for insurer was admissible); *Strain v. Heinssen,* 434 N.W.2d 640, 643 (Iowa 1989) (mere payment by insurance company in exchange for expert's testimony at trial not probative enough to outweigh prejudice absent an agency or employment relationship); *Wallace v. Leedhanachoke,* 949 S.W.2d 624, 628 (absent "more compelling degree of connection" between expert and defendant's insurer, no abuse of discretion in ruling evidence of commonality inadmissible); *Lopez v. Southwest Community Health Services,* 114 N.M. 2, 833 P.2d 1183, 1194 (N.M.App.1992) (no abuse of discretion in allowing evidence of witness' relationship with certain insurers where trial court balanced probative value with prejudice to defendant); *Cerasuoli v. Brevetti,* 166 A.D.2d 403, 560 N.Y.S.2d 468, 470 (1990) (by permitting plaintiffs to show witness' prior medical services for law firms trial court achieved a fair balance between right to attack credibility and prejudicial effect of introducing fact of defendant's insurance coverage); *Patton v. Rose,* 892 S.W.2d 410, 415 (Tenn.Ct.App.1994) (no abuse of discretion in excluding evidence of commonality where trial court weighed probative value against danger of prejudice); *Mendoza v. Varon,* 563 S.W.2d 646, 649 (Tex.Civ.App.

1978) (no error in excluding evidence of common insurer where witness had "no direct interest" in outcome of litigation).

¶6 Under the connections test, a plaintiff must be able to establish that an expert has more connection to a defendant's insurer than that of policyholder, or in the case of a mutual insurance company, membership. As the Alabama Supreme Court reasoned:

> The potential for bias on the part of any witness due to his coverage under a professional liability policy is so remote as to be virtually non-existent. When this remote potential for bias is balanced against the overwhelming prejudicial effect of allowing evidence of professional liability insurance, it becomes evident that admission of such evidence would be error.

*Otwell,* 497 So.2d at 115.

¶7 Something "[b]eyond mere payment in exchange for testimony [at] trial" must be established. *Strain,* 434 N.W.2d at 643. The witness must have some "direct interest in the outcome of the litigation, as would an agent, owner or employee of the defendant's insurer." *Mendoza,* 563 S.W.2d at 649. Instances of more direct relationships tipping the scales in favor of allowing evidence of common liability insurance include: 1) "the expert's position on the board of a physicians' insurance company at the time he testified," *Evans,* 902 P.2d at 874, *see also Barsema,* 751 P.2d at 973 (expert's position as vice president and member of board); 2) the fact that the witness is an employee of defendant's insurer, *see Charter v. Chleborad,* 551 F.2d 246 (8th Cir.1977), *accord Beatrice Creamery Co. v. Goldman,* 175 Okla. 300, 52 P.2d 1033, 1034 (Syllabus by the Court ¶2: "On cross-examination of defendant's witness in a personal injury action, the plaintiff may, for the purpose of showing witness' interest in the action, elicit from him the fact that he is employed by defendant's insurer."); 3) the expert witness physician's "significant economic services for [the mutual insurance company] in reviewing claims made against [its] doctor members to determine if those suits should have any impact on the insurance premiums they pay." *Golden v. Kishwaukee Community Health Services Center,*

269 Ill.App.3d 37, 206 Ill.Dec. 314, 320, 645 N.E.2d 319, 325 (1994).

¶8 The rationale put forward by the preponderance of jurisdictions that have addressed the issue persuades this Court to adopt the connections test. By it, a trial court must determine when an expert's connection to a defendant's insurer is probative enough to substantially outweigh the prejudice to defendant resulting from the jury's knowledge that defendant carries liability insurance.

■ ¶9 Utilizing the connections test, a trial judge should "[i]n all but the exceptional case ... hold that the danger of prejudice resulting from the interjection of insurance evidence substantially outweighs the probative value of evidence that the witness and a party have a common insurer." *Barsema,* 751 P.2d at 973. A stronger connection between the witness and a party's insurer must be demonstrated. The requisite strength of connection would include ownership, agency, or employment. Ownership must be more than membership in a mutual insurance company, agency includes membership on an insurer's board of directors or claims review committee, and employment must be something beyond the expert's fee for services in the matter being adjudicated.

¶10 In short, unless it is shown that a witness has a substantial connection with the business of the common insurer, there is no basis for discrediting a person's testimony for bias derived from interest in the common insurer's business. Without a substantial connection, there is no basis for allowing the common insurer's status to be disclosed to the jury.

■ ¶11 This Court's review of the record reveals no abuse of the trial court's discretion in granting Defendant's motion to exclude any reference to liability insurance under the facts and circumstances of this case. The expert's connection to Defendant's insurer was essentially one of policyholder. The requisite degree of connection justifying admissibility was not demonstrated.

## II.

¶ 12 Plaintiffs also assert error in the trial court's refusal to sustain their objection to defense counsel's use of the terms "guilty" and "convict" during closing arguments. They argue that these terms are never appropriate in a civil action for negligence. They assert that the use of these terms resulted in a defense verdict based on passion and prejudice. Evidence of this can be found, Plaintiffs claim, in the fact that it took the jury only ten minutes to enter its verdict following a four-day trial. In response, Defendant points to the use of these terms in various forms of legal authority to demonstrate that they have legitimate meaning in both civil and criminal contexts.

¶ 13 The term "guilty" is defined as "responsible for a crime or tort or other offense or fault." *Blacks Law Dictionary* (6th ed.1990). It is used in the Oklahoma Statutes, the Oklahoma Uniform Jury Instructions (Civil), and the comments to describe negligent or other non-criminal but wrongful behavior. *See* Okla. Stat. tit. 23, § 9.1 (Supp. 1995); Oklahoma Uniform Jury Instructions (Civil) Nos. 2.1, 2.2, 5.9 cmts. 5.6, 5.9 (2d ed.) In addition, opinions from this Court have utilized the phrases "guilty of negligence" or "guilty of contributory negligence." *See, e.g., Dirickson v. Mings,* 910 P.2d 1015, 1019 (Okla.1996) (motorist who collides with parked vehicle "guilty of negligence" if parked vehicle visible); *Graham v. Keuchel,* 847 P.2d 342, 358 (Okla.1993) ("The defense of contribution negligence does not even arise unless the defendant has been guilty of negligence...."); *Strong v. Allen,* 768 P.2d 369, 370 (Okla.1989) (child of tender years cannot be "guilty of contributory negligence"). The terms "convicted" or "conviction" have also been used by courts to describe a civil judgment against a defendant. *See Chesapeake O. Ry. v. Craft,* 162 F.2d 67, 69 (4th Cir.1947) (train engineer will not "on pain of conviction of negligence" be required to make spur of moment estimate of risk); *Winchester v. Padgett,* 167 F.Supp. 444, 448 (N.D.Ga.1952) ("court convictions of negligence" to prove incompetence of driver in negligent entrustment action); *Hicks v. State,* 422 S.W.2d 539, 542 (Tex.Civ.App.

1967) ("a conviction for negligence or error in professional judgment").

¶ 14 "Conduct of counsel ordinarily is not grounds for reversal, unless such conduct substantially influences the verdict or denies the defendant a fair trial. The crucial question is whether counsel's remarks resulted in actual prejudice." *Fields v. Volkswagen of America,* 555 P.2d 48, 61 (Okla. 1976) (citation omitted). Plaintiffs have not demonstrated error in defense counsel's use of "guilty" and "convict" in closing argument, nor that they were prejudiced therefrom. Their argument is unavailing.

## III.

¶ 15 Plaintiff asserts four other errors by the trial court in admission of evidence and conduct of the trial. However each of these assertions lacks any citation of authority. "It is well settled that assignments of error unsupported by any authority will not be noticed by the Court unless it is apparent, without further research, that they are well taken." *Peters v. Golden Oil Company,* 600 P.2d 330, 331 (Okla.1979). Because no authority has been cited and the arguments do not persuade this Court to reverse the discretionary rulings of the trial court, the issues will not be considered.

### Conclusion

¶ 16 Plaintiffs have not demonstrated an abuse of discretion in any of the trail court's complained of decisions concerning admission of evidence and conduct of the trial. Therefore, these decisions will not be disturbed on appeal.

AFFIRMED.

¶ 17 SUMMERS, V.C.J., LAVENDER, SIMMS, HARGRAVE, OPALA, WILSON, WATT, JJ. concur.

¶ 18 KAUGER, C.J., concurs in result.